**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 29 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

JAIME VALDEZ,

        Defendant-Appellant.

No. 99-3248

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 98-10117-01-MLB)**

---

Cyd Gilman, Assistant Federal Public Defender, Wichita, Kansas, for the Defendant-Appellant.

Jackie N. Williams, United States Attorney, D. Blair Watson, Assistant United States Attorney, Wichita, Kansas, for the Plaintiff-Appellee.

---

Before , **SEYMOUR** , Chief Judge, **HENRY** , and **MURPHY** , Circuit Judges. [*]

---

**HENRY** , Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for decision on the briefs without oral argument. See Fed. R. App. P. 34(f). The case is therefore submitted without oral argument.

A jury convicted Jaime Valdez on various counts of distribution and possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a).  Mr. Valdez appeals his conviction, contending the court erred in instructing the jury on the evaluation of accomplice testimony obtained in exchange for promises of sentencing leniency by the government.  Further, Mr. Valdez asserts the court erred in using drug quantities underlying counts for which the court granted judgment of acquittal as relevant conduct in calculating his sentence.  For reasons set forth below, we affirm on both issues.

## I.  BACKGROUND

The Wichita Kansas Police investigated Mr. Valdez, Arturo Fria Vazquez Del Mercado ("Mr. Fria"), Jo L. Taylor, and Shawna Chincoya, believing them to be involved in the sale of illegal drugs.  Detective Brent Garrison, working under cover, held many conversations with Mr. Valdez regarding the sale of methamphetamine and made at least two purchases from Mr. Valdez.  At one meeting, Mr. Valdez introduced Mr. Fria to Detective Garrison as the person who would be taking over the drug business when Mr. Valdez left the country.

The police arrested all four subjects of the investigation, charging them with various counts of possession of methamphetamine with intent to distribute, distribution of methamphetamine, and conspiracy to distribute methamphetamine.

Specifically, Mr. Valdez was charged in a Second Superseding Indictment with five counts of distribution of methamphetamine (Counts 1, 2, 3, 5 and 6), one count of distribution of amphetamine (Count 4), one count of possession of methamphetamine with intent to distribute (Count 7), and one count of conspiracy to distribute methamphetamine (Count 9).

Pursuant to plea agreements, Ms. Taylor and Ms. Chincoya both pleaded guilty and agreed to cooperate with the government by testifying at Mr. Valdez' and Mr. Fria's trials. In exchange for their testimonies, the government promised to file motions pursuant to USSG §5K1.1 and 18 U.S.C. § 3553(e), recommending a departure from the presumptive guidelines sentence.

After the prosecution's case, the court granted Mr. Valdez' motion for judgment of acquittal as to Counts 6 and 7 because the prosecution could not prove the substances underlying those charges contained a "measurable amount" of methamphetamine. The jury convicted on all remaining counts.

At sentencing, however, the court included the drug quantities underlying Counts 6 and 7 in Mr. Valdez' relevant conduct. Mr. Valdez filed an objection which the court overruled. The court sentenced Mr. Valdez to 240 months' imprisonment.

## II. DISCUSSION

-3-

**A.     Jury Instruction on Accomplice Testimony**

Mr. Valdez asserts the court erred in rejecting his proposed jury instructions regarding accomplice testimony and that the instruction given to the jury was erroneous. "We review the district court's decision to give a particular jury instruction for abuse of discretion and consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." United States v. Cerrato-Reyes, 176 F.3d 1253, 1262 (10th Cir. 1999). "We will not reverse unless we have substantial doubt that the jury was fairly guided." United States v. Guidry, 199 F.3d 1150, 1156 (10th Cir. 1999) (quotation omitted).

Mr. Valdez submitted two proposed jury instructions regarding accomplice testimony, which the court rejected. One of the proposed instructions informed the jury as follows:

> You may give the testimony of this [accomplice] such weight as you think it deserves. Whether or not testimony of a witness may have been influenced by her hope of receiving a reduced sentence is for you to decide. However "common sense suggests that an accomplice often has a greater interest in lying in favor of the prosecution rather than against it, epical [sic] if (she) is still awaiting (her own) sentencing. To think that criminals will lie to save their fellows but not to obtain favors from the prosecution for themselves is intended to clothe the criminal class with more nobility than one might expect to find in the public at large." [ Washington v. Texas, 87 S. Ct. 1920, 1925 (1967).] "It is difficult to imagine a greater motivation to lie than the inducement of a reduced sentence." [ United States v. Cervantes-Pacheco, 826 F.2d 310, 315 (5th Cir. 1987).]

-4-

Aple's Br. at 14 (Requested Instr. No. 2).  Thus, Mr. Valdez sought an

instruction which specifically pointed out the suspect credibility of accomplice

testimony.

Instead, the court tendered the following instruction:

You have heard evidence that Chincoya and Taylor each hope to receive a reduced sentence in return for their cooperation with the government.  Both are subject to mandatory minimum sentences, that is, sentences which must be of a certain minimum length.  Chincoya and Taylor have entered into plea agreements with the government which provide that if the prosecutor handling these witnesses' cases believes that they have provided substantial assistance in this case, he can file in this court a motion to reduce the sentences below the mandatory minimum.  I have no power to reduce a sentence for substantial assistance unless the U.S. Attorney files such a motion.  If such a motion is filed then it is entirely up to me to decide whether to reduce the sentence at all, and if so, how much to reduce it.

The testimony of a witness who provides evidence against a defendant for personal advantage, such as the possibility of a reduced sentence, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness.  The jury must determine whether the witness's testimony has been affected by self interest, or by prejudice against the defendant.

Rec. vol. 3, doc. 106 (Instr. 30).

In United States v. Narviz-Guerra , 148 F.3d 530 (5th Cir. 1998), the Fifth

Circuit upheld, under plain error review, an instruction similar to the one given

here: "[t]he testimony of one who provides evidence against a defendant as an

informer pursuant to the terms of a plea agreement, or for personal advantage or

vindication, must always be examined and weighed by the jury with greater care

-5-

and caution than the testimony of ordinary witnesses." Id. at 538 n.5. In affirming the instruction the court explained that although "the judge did not give an instruction pointing out the witnesses' suspect credibility, he did instruct the jury to carefully, cautiously weigh the testimony of those who have entered into a plea agreement." Id. at 538. The court further noted that "[i]t is up to the jury to evaluate the credibility of compensated witnesses, and the judge's instruction allowed the jury to do so." Id. (citation omitted). Similarly, here, the instruction informed the jury to weigh the accomplice testimony carefully and with caution. Thus, the fact that it did not specifically point out the suspect nature of accomplice testimony did not render it erroneous. See id.; United States v. Caraveau , No. 96-8115, 1997 WL 616064 (10th Cir. Oct. 7, 1997) (upholding jury instruction nearly identical to the one tendered in this case).

Mr. Valdez' other proposed instruction contained the following language:

Under the current law, the only way that a cooperating witness can receive a reduction of his sentence below the numerically determined guideline range or the mandatory minimum is if a prosecutor files a motion with the sentencing judge asking the judge to reduce the sentence of the witness.

. . . The decision to file a 5K1.1 motion or Rule 35 motion is within the sole discretion of the prosecutor. . . .

. . . You should consider that such a witness may be motivated to please the prosecutor, since only the prosecutor, not the defense lawyer, can help that witness obtain a reduction of his sentence.

Aple's Br. at 13 (Requested Instr. No. 1).

In United States v. Abrego, 141 F.3d 142 (5th Cir. 1998), the Fifth Circuit upheld the district court's rejection of proposed jury instructions with similar language. There, the court concluded the proposed instructions, "while perhaps not a technically inaccurate statement of the law, at a minimum had the potential to confuse or mislead the jury," because they created the impression that the prosecutor, not the judge, actually possessed the authority to reduce the witness's sentence. Id. at 153 n.2. Mr. Valdez' first proposed instruction was similarly technically accurate but potentially confusing and misleading with regard to the prosecutor's authority to reduce the witnesses' sentences.

Mr. Valdez distinguishes Abrego on the grounds that the instructions actually adopted by the trial court and presented to the jury in that case tracked the language of the Fifth Circuit Pattern Jury Instructions while those adopted by the court in this case do not. This argument is unconvincing. In fact, the instruction given in this case does not significantly differ from the Fifth Circuit Pattern Jury Instructions. See Committee On Pattern Jury Instructions, District Judges Ass'n Fifth Cir., Pattern Jury Instructions (Criminal Cases) 25-26 (1997); Abrego, 141 F.3d at 153 ("This court has held that [the Fifth Circuit Pattern Jury Instructions] adequately safeguard a criminal defendant when the government offers the testimony of a compensated informant."). Both instructions inform the

jury to weigh the testimony of an accomplice with greater care. Moreover, even if the instruction tendered in this case did not track the language of the Fifth Circuit Pattern Jury Instructions, that would not warrant the conclusion that the instruction was erroneous. The instruction adequately informed the jury to weigh the credibility of accomplice testimony with caution and Mr. Valdez "is not entitled to 'any specific wording of instructions.'" United States v. McGuire, 27 F.3d 457, 462 (10th Cir.1994) (quoting United States v. Bryant, 892 F.2d 1466, 1468 (10th Cir.1989)).

Finally, Mr. Valdez contends the court's instruction was erroneous because it only referred to the government's promise to file a motion to reduce the accomplices' sentences below the statutory minimum and failed to inform the jury of the government's promise to file a motion to request sentences below the applicable guidelines range. Because both motions are necessary for an accomplice to receive a reduced sentence, Mr. Valdez argues the tendered instruction was misleading.

Mr. Valdez cites no authority for his contention and we conclude it is without merit. As the government points out, the jury was allowed to view the accomplices' plea agreements, which specifically set forth the government's promise to file a motion to reduce their sentences below the statutory minimum and a motion to reduce their sentences below the applicable guidelines range.

-8-

Additionally, both accomplices were cross-examined as to these promises. Therefore, we conclude the tendered instruction's reference only to the government's promise to file a motion to reduce the accomplices' sentences below the statutory minimum adequately informed the jury of the government's promises of leniency at sentencing. Accordingly, we hold the court did not err in instructing the jury on the evaluation of accomplice testimony.

**B.     Use of Drug Quantities Underlying Acquitted Charges as Relevant Conduct at Sentencing**

Prior to trial, Mr. Valdez filed a Motion for Judgment of Acquittal as to Counts 6 and 7, arguing there were insufficient amounts of methamphetamine in the substances underlying the charges to sustain a conviction. The court initially denied the motion but ruled that the government would be required to prove a "measurable amount" of methamphetamine at trial.

At trial, the government's witness, Jeff Bryant, testified that the substances underlying Counts 6 and 7 contained "trace" amounts but that he had not quantified them. The essence of his testimony was that the amounts of methamphetamine were detectable but not measurable or quantifiable.    See Rec. vol. II at 448-49. At the close of the prosecution's case, the defense renewed its motion for acquittal on Counts 6 and 7 on the grounds that the prosecution had

not proven a "measurable amount" of methamphetamine as required by the court's earlier order. The court granted the motion.

At sentencing, Mr. Bryant testified again, this time asserting the mixtures underlying Counts 6 and 7 were quantifiable. He testified that the tests conducted on the substances underlying Counts 6 and 7 had, in fact, measured the amounts of actual methamphetamine as .28% and .19% respectively. He further asserted that these quantifications had been completed but not reported at the time he testified at trial. Moreover, he explained that, prior to his trial testimony, he had been advised by a DEA chemist to report small amounts of methamphetamine as "traces." The court, accepting this testimony, included the substances underlying Counts 6 and 7 as part of Mr. Valdez' relevant conduct at sentencing. Mr. Valdez asserts this was error in light of the fact that the court granted him a judgment of acquittal on Counts 6 and 7 because the government could not prove a "measurable amount" of methamphetamine.

"We review challenges to the district court's underlying factual findings for clear error." United States v. Checora, 175 F.3d 782, 788 (10th Cir. 1999). However, where the appellant "ask[s] us to interpret the Guidelines or hold the facts found by the district court are insufficient as a matter of law to warrant an enhancement, we must conduct a de novo review." Id. at 789. Applying these standards, we conclude the court did not err.

-10-

First, the court's grant of acquittal on Counts 6 and 7 only established that, as a matter of law, the government failed to prove a "measurable amount" of methamphetamine <u>beyond a reasonable doubt</u>. The Supreme Court has expressly held that "an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." <u>Dowling v. United States</u>, 493 U.S. 342, 349 (1990). Thus, the judge's grant of acquittal did not prevent the court from considering whether the government could prove the necessary amount of methamphetamine in the substances relating to the acquitted charges under the lower preponderance of the evidence standard used at sentencing. <u>Cf.</u> <u>United States v. Watts</u>, 519 U.S. 148, 156 (1997) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.").

Second, the court distinguished the amount necessary for a conviction under 21 U.S.C. § 841(a), "measurable," from the amount necessary at sentencing, "detectable." Thus, the court implied that a "detectable amount" is something less, and therefore bears a lower burden of proof, than a "measurable amount." As a result, the court determined that the judgment of acquittal on Counts 6 and 7 was irrelevant to deciding whether the drug amounts in those counts may be included as relevant conduct at sentencing.

Regardless of whether the court was correct in requiring something greater than a "detectable amount" of methamphetamine for a conviction under § 841(a), the relevant sentencing provisions, 21 U.S.C. § 841(b) and USSG §2D1.1, Drug Quantity Table, n.A, by their plain language, clearly only require the government to prove a "detectable amount" of methamphetamine. [1] Even though the amounts of pure methamphetamine contained in the substances underlying Counts 6 and 7 were small enough to be labeled "traces," that is sufficient to constitute a "detectable amount" under § 841(b) and the guidelines. See United States v. Killion , 7 F.3d 927, 935 (10th Cir. 1993) ("In this case, the evidence showed that there was 52.9 grams of P-2-P in the yellow liquid, and an unquantifiable trace of P-2-P in the hardened dark brown substance. There was thus a 'detectable

---

[1] We note that 21 U.S.C. § 841(a) uses the same phrase, "detectable amount," as used in § 841(b) and USSG §2D1.1, Drug Quantity Table, n.A. Cf. USSG §2D1.1 comment., (n.1) ("'Mixture or substance' as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided."). Thus, we question the court's grant of a judgment of acquittal on Counts 6 and 7, since the government's chemist testified at trial that the amounts were in fact detectable even if they were not measurable. In ruling that the government was required to prove a "measurable amount" in order to obtain a conviction under § 841(a) the district court relied on two of our previous cases. Although those cases in fact state that § 841(a) requires "any measurable quantity," United States v. Poole, 929 F.2d 1476, 1483 (10th Cir. 1991) (emphasis added), it is not clear that they intended this term to mean something greater than, or even different from, "detectable amount." See also United States v. Deninno, 29 F.3d 572, 578 (10th Cir. 1994) (upholding an instruction that informed the jury that "the evidence need not establish the [actual] amount or quantity of the controlled substance . . . as alleged in the indictment." but rather, "it must find only that there existed a measurable amount of the controlled substance.").

-12-

amount' of P-2-P present in both containers    , and the district court did not err in using the entire weight of the mixtures, including the weight of any waste by-products, in calculating [the defendant's] base offense level.") (emphasis added).

Mr. Valdez further argues the government cannot establish a detectable amount by a preponderance of the evidence because Mr. Bryant's testimony at sentencing quantifying the amount of methamphetamine underlying the acquitted charges directly contradicted his testimony at trial that the amounts were not measurable or quantifiable.  [2]  We are not persuaded by this argument.

As previously stated, a substance containing an "unquantifiable trace" of methamphetamine still contains a sufficiently detectable amount of the drug to be included as relevant conduct.    Killion, 7 F.3d at 935.  Mr. Bryant testified both at trial and at sentencing that methamphetamine was "detectable" and found in "traces" in the substances underlying Counts 6 and 7.  Mr. Bryant's testimony

---

[2] Mr. Valdez asserts he was entitled to the higher clear and convincing evidence standard at sentencing because inclusion of the substances underlying the acquitted charges in his relevant conduct dramatically increased his sentence. This argument is foreclosed by binding precedent.     See Watts, 519 U.S. at 156 (leaving it up to the Circuits to decide whether, "relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence" as opposed to a preponderance of evidence);     United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993) ("We have clear holdings that the preponderance standard applies to fact finding in the sentencing process. . . . At least as concerns making guideline calculations[,] the issue of a higher than a preponderance standard is foreclosed in this circuit.")       .

was contradictory only with respect to whether the amounts of methamphetamine were "measurable" or "quantifiable." To the extent those terms imply an amount greater than "detectable," they are not the standard for including drug quantities in relevant conduct at sentencing. See 21 U.S.C. § 841(b); USSG § 2D1.1, Drug Quantity Table, n.A. Moreover, any inconsistencies in Mr. Bryant's testimony are an issue of credibility best resolved by the district court.

There is sufficient evidence in the record to support the court's finding that the substances underlying the acquitted charges contained a detectable amount of methamphetamine. Thus, we conclude the court did not err by including these substances in Mr. Valdez' relevant conduct at sentencing.

## III. CONCLUSION

For the foregoing reasons the judgment of the district court is AFFIRMED.