**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ronald D. ALEXANDER,**
**Defendant–Appellant.**

**No. 01–3170.**

United States Court of Appeals,
Tenth Circuit.

June 11, 2002.

---

David M. Lind, Assistant United States Attorney (James E. Flory, United States Attorney, with him on the brief), Wichita, KS, for Plaintiff Appellee.

Kari S. Schmidt of Foulston Conlee Schmidt & Emerson, LLP, Wichita, KS, for Defendant Appellant.

Before HARTZ, ALDISERT* and HOLLOWAY, Circuit Judges.

\* Ruggero J. Aldisert, Senior United States Cir- cuit Judge for the Third Circuit, sitting by

ALDISERT, Circuit Judge.

Ronald D. Alexander appeals the sentence imposed following a jury verdict finding him guilty of unlawful possession with the intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841. His contentions on this appeal require us to decide whether the district court properly enhanced Appellant's sentence (1) pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon and (2) pursuant to U.S.S.G. § 3C1.1 for obstructing or impeding the administration of justice. We must also decide whether we should entertain Appellant's ineffective assistance of counsel claim on direct appeal.

Section 2D1.1(b)(1) provides for a two-level sentence enhancement if a dangerous weapon (including a firearm) was possessed during a drug conspiracy. *United States v. Vaziri*, 164 F.3d 556, 568 (10th Cir.1999). "The government's initial burden is met 'when it shows that a weapon was located near the general location where at least part of a drug transaction occurred.'" *United States v. Heckard*, 238 F.3d 1222, 1233 (10th Cir.2001) (quoting *Vaziri*, 164 F.3d at 568). Section 3C1.1 provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.

■ The district court had jurisdiction pursuant to 28 U.S.C. § 1331. Appellant timely appealed his conviction and sentence in compliance with Rule 4(a)(1) of the Federal Rules of Appellate Procedure. We have jurisdiction pursuant to 28 U.S.C. § 1291. In sentencing matters, factual findings are reviewed under the clearly erroneous standard. "[W]here the appellant 'ask[s] [the court] to interpret the Guidelines or hold the facts found by the district court are insufficient as a matter of law to warrant an enhancement, [the court] must conduct a de novo review.'" *United States v. Valdez*, 225 F.3d 1137, 1142 (10th Cir.2000) (citing *United States v. Checora*, 175 F.3d 782, 789 (10th Cir. 1999)).

## I.

■ We quickly dispose of Appellant's ineffective assistance of counsel contention. This court has made it quite clear that "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir.1995) (en banc) (citing *Beaulieu v. United States*, 930 F.2d 805, 806–807 (10th Cir.1991)). As recognized in *Galloway*, effective review of ineffective assistance of counsel claims requires that a factual record be developed in and addressed by the district court in the first instance. *Id.* at 1240.

We now turn to the contention that there was insufficient evidence to support the enhancement of Appellant's sentence under § 2D1.1(b)(1) for possession of a firearm in connection with a drug trafficking offense.

## II.

It is necessary to set forth the facts that undergird Appellant's contention that

designation.

there was insufficient evidence. On April 22, 1999, following a controlled buy of crack cocaine, officers from the Wichita Police Department's Special Community Action Team ("SCAT") executed a search warrant at 847 South Mission in Wichita, Kansas. This was the home of Appellant Ronald D. Alexander and his cousin Andre Alexander, who was a co-defendant in the district court proceedings. At the time the police approached the dwelling, there were four people in the house: Ronald, Andre, Andre's girlfriend, Devon Anderson, and Donya Myer. The police knocked on the front door and announced who they were, stating that they were there to execute a search warrant. Upon hearing this, Appellant and Donya Myer ran out the back door. The police soon captured Myer, however, Appellant initiated a foot race with police officers. Unfortunately for Appellant, the law enforcement personnel were able to take him into custody after he slipped and fell. At this time, Appellant had $700.00 in his pocket.

The police found Andre in the front room of the first floor and Devon Anderson in Andre's bedroom. The police then initiated a search of the premises. The officers were looking for evidence of cocaine and they found it—scales with cocaine residue in the kitchen and approximately 1.45 grams of crack cocaine in Appellant's bedroom. But it was in Andre's bedroom closet where police found the evidence most relevant to the firearm enhancement issue. They found a plastic Tupperware carton containing cash, a cigar box and, next to it, a bag containing approximately 14.6 grams of crack cocaine. In the box was a nine millimeter handgun and a loaded nine millimeter magazine. Significantly, Appellant's left thumb print was found on the cigar box.

On the basis of this and other matters not relevant here, Appellant and his cousin Andre were indicted in a one-count indictment for possession with intent to distribute five or more grams of a mixture or substance containing a detectable amount of crack cocaine base (crack cocaine) in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. Andre entered a plea of guilty and was duly sentenced. However, it was not until October 2000 that Appellant was arrested and returned to the District of Kansas. Appellant filed a motion *in limine* to suppress statements he made following his arrest contending that, because he was intoxicated, he could not remember whether Police Officer Tucker administered appropriate *Miranda* warnings before obtaining a statement. A hearing followed and the district court judge refused to credit Appellant's testimony. Following a jury trial, the jury returned the following verdict: "We the jury, duly impaneled and sworn, upon our oaths find the Defendant, Ronald D[.] Alexander, guilty as charged in Count 1 of the indictment. What quantity of crack cocaine did Defendant possess on April 22nd, 1999? 16.41 grams." Record, Vol. VI, Doc. 88 at 353.

### III.

#### A.

Appellant's principal argument on the firearm enhancement issue is somewhat convoluted. He argues that because the Guidelines fail to define any form of the word "possess," although they do define "brandished or otherwise used," § 2D1.1(b)(1) is impermissibly vague because "possess" has many meanings. From this major premise he argues that because the word "possess" is vague and ambiguous, the rule of lenity should apply, and therefore we should conclude that the government failed to prove possession. Appellant's Brief at 16.

▮▮▮▮▮ Whatever force Appellant's argument may have in an abstract, theoretical

discourse, we are not writing on a clean slate here. There is a profound body of law of this court that informs our decision. Section 2D1.1 provides for an offense level enhancement of two points " '[i]f a dangerous weapon (including a firearm) was possessed' during a drug conspiracy." *Vaziri,* 164 F.3d at 568 (quoting U.S.S.G. § 2D1.1(b)(1) (1995)). This court has determined that "[t]he [enhancement for weapon possession] should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *United States v. Humphrey,* 208 F.3d 1190, 1210 (10th Cir.2000) (quoting U.S.S.G. § 2D1.1, cmt. n. 3 (2001)). "The initial burden is on the government to prove possession of the weapon by a preponderance of the evidence, which may be satisfied by showing 'mere proximity to the offense.' " *Id.* (quoting *United States v. Smith,* 131 F.3d 1392, 1400 (10th Cir.1997)). This initial burden is met "when it shows that a weapon was located near the general location where at least part of a drug transaction occurred." *Heckard,* 238 F.3d at 1233 (10th Cir.2001) (quotation marks and citations omitted).

> After the government has met this burden, a defendant can still avoid the enhancement if he can prove that it is clearly improbable that the weapon was connected to the offense ... [I]n a drug conspiracy conviction the adjustment should be applied unless it is clearly improbable that the weapon was connected with the conspiracy offense.

*Humphrey,* 208 F.3d at 1210 (citing *United States v. Goddard,* 929 F.2d 546, 548 (10th Cir.1991)).

■ Enhancement under § 2D1.1(b)(1) is "designed to reflect the increased danger of violence when drug traffickers add firearms to the mix." *United States v. Flores,* 149 F.3d 1272, 1280 (10th Cir.1998) (citing *United States*

*v. Contreras,* 59 F.3d 1038, 1040 (10th Cir. 1995)).

> Although in many cases the weapon will be involved with some sort of illegal transaction, it is not necessary for the Government to show that drugs and money changed hands near the weapon; the weapon may simply serve as a potentially deadly means of protecting the trafficker's goods, thereby increasing the danger of violence.

*Id.*

■ "Possession of a weapon in connection with a drug trafficking offense 'is established if the government proves by a preponderance of the evidence that a temporal and spacial relation existed between the weapon, the drug trafficking activity, and the defendant.' " *Id.* (citing *United States v. Roederer,* 11 F.3d 973, 982 (10th Cir.1993) (internal quotation and citation omitted)). The necessary nexus between the weapon, drug trafficking and defendant "may be established by showing that the weapon was located nearby the general location 'where drugs or drug paraphernalia are stored or where part of the transaction occurred.' " *Id.* (citing *Roederer,* 11 F.3d at 983) (citation omitted).

### B.

■ Measured against this formidable array of ruling case law, we turn to the facts before us. In a bedroom the law enforcement officers found a handgun in a cigar box, in a closet, next to a quantity of crack cocaine. Although this was in his cousin's bedroom, Appellant's fingerprint was found on the cigar box containing the firearm. Appellant was found guilty of, and his co-defendant-cousin pleaded guilty to, possession with intent to distribute crack cocaine. We are satisfied that this was sufficient evidence to demonstrate that the firearm was connected to, or in proximity with, the crime because it estab-

lished a temporal, spacial nexus between the firearm and the crack cocaine. *See Flores*, 149 F.3d at 1280.

As we noted previously, "[o]nce the government establishes that the gun was possessed in proximity to the drugs or transaction, the burden shifts to the defendant to 'show it is clearly improbable that the weapon was related to the offense.'" *Id.* (quoting *United States v. Robertson*, 45 F.3d 1423, 1449 (10th Cir.1995)) (internal quotation and citation omitted). At trial, Appellant's counsel understood this and agreed that the United States had met its initial burden. This is extremely important because it represents a concession by the Appellant that "the government [had] prove[d] by a preponderance of the evidence that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *Roederer*, 11 F.3d at 982 (internal quotation and citation omitted). The record at the sentencing hearing discloses:

> THE COURT: The next one that I have is the one about the presence of the firearm, which is your burden to show that it was not connected with the offense so—
>
> \* \* \* \* \* \*
>
> COUNSEL: I agree it's my burden to show it was not connected with the offense....

Record, Vol. VII, Doc. 89 at 10.

Even without Appellant's concession, our review of the record persuades us that the government met its burden of "showing that the weapon was located nearby the general location where drugs or drug paraphernalia [were] stored or where part of the transaction occurred." *Flores*, 149 F.3d at 1280 (internal quotation and citation omitted). Moreover, we deem it significant that Ronald Alexander and his cousin and co-defendant, Andre Alexander, were the only inhabitants of the dwelling, that Andre pleaded guilty to possession

with intent to distribute and that Ronald was found guilty of the charge. This was sufficient to require Appellant to go forward with the evidence and show that it was "clearly improbable that the weapon was related to the offense." *Id.* He failed to do this. Accordingly, we conclude that the district court did not err in enhancing the sentence for possession of a firearm.

 The teachings of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) do not preclude the imposition of this enhancement. The Court held that "with regard to federal law, the Fifth Amendment's Due Process Clause and the Sixth Amendment's notice and jury trial guarantees require that any fact other than prior conviction that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 466, 120 S.Ct. 2348. The enhancement for possession of a firearm does not increase the penalty beyond the statutory maximum and therefore need not be proved as an element of the offense. In passing, we also note that the jury did find the total quantity of the controlled substance at issue beyond a reasonable doubt. We are satisfied that the court did not err in enhancing the sentence for possession of a firearm.

## IV.

The Sentencing Guidelines mandate a two point upward adjustment if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense...." U.S.S.G. § 3C1.1 (2001).

 In support of the court's imposition of the enhancement under the

Guidelines, the government argues that this upward adjustment may be triggered by perjured testimony at trial. *See, e.g.,* U.S.S.G. § 3C1.1, cmt. n. 4(b) (2001); *United States v. Chavez,* 229 F.3d 946, 954–955 (10th Cir.2000). However, "[t]he mere fact that a defendant testifies to his or her innocence and is later found guilty by the jury does not automatically warrant a finding of perjury." *United States v. Markum,* 4 F.3d 891, 897 (10th Cir.1993) (citing *United States v. Hansen,* 964 F.2d 1017, 1020 (10th Cir.1992)). Rather, "[t]o establish a defendant's perjury, the court must find that he (1) when testifying under oath, gives false testimony; (2) concerning a material matter; (3) with willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Copus,* 110 F.3d 1529, 1536 (10th Cir.1997) (quotation marks and citation omitted).

 We will affirm the district court's determination, but not on the basis of the government's approach. Rather, we believe that the circumstances here demonstrate a situation where sentence enhancement was proper because it is evident that Appellant "willfully ... impeded, or attempted to ... impede, the administration of justice...." U.S.S.G. § 3C1.1 (2001). "Impede" is defined as "to interfere with or get in the way of the progress of." WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED (1968).

Appellant filed a motion *in limine* on January 4, 2001, requesting an order "directing that the government not introduce statements made by Mr. Alexander while under interrogation." Record, Vol. I, Doc. 54 at 2. His proffered reason was that "[d]ue to Mr. Alexander's physical and mental condition at the time of the interrogations, he did not understand his rights under *Miranda,* and his statements were neither knowingly nor voluntarily made."

*Id.* He requested an evidentiary hearing, which was held on January 23, 2001. During this hearing, at which the district judge, court reporter, opposing counsel and supporting court staff were all present, two witnesses were called. On January 30, 2001, the district judge filed a Memorandum and Order denying the motion. The Clerk's office received this instrument for filing and docketed it as well as all written matters dealing with the motion and evidentiary hearing. It bears emphasis that about a month was committed to processing the motion *in limine.*

In denying the motion, the court said:

Defendant stated on direct examination that he can recall arriving at the police station but cannot remember filling out the personal history sheet, being asked to read aloud from the "Your Rights" form or signing the form. Defendant admitted, however, that his signature appears on the form.

\* \* \* \* \* \*

Defendant's testimony to the effect that he did not understand and waive his *Miranda* rights was completely incredible. Defendant may, or may not, have been smoking marijuana at the time the officers entered the residence but he was not too intoxicated to attempt an escape. The court is satisfied that defendant was not intoxicated or impaired when he was questioned by Officer Tucker. Defendant's direct testimony that he did not understand and did not waive his *Miranda* rights is belied by his sudden memory change during the hearing, the fully executed waiver form and his previous experience with police interrogation and the *Miranda* warning.

Record, Vol. I, Doc. 66 at 2–3.

We fast forward to Appellant's testimony at trial on February 6, 2001, during which Appellant abandoned the account he

gave under oath at the suppression hearing. This time, Appellant admitted that Officer Tucker had read him his rights, that he knew what these rights were and that he had subsequently waived them.[1]

The district court commented on this testimony:

Now, it seems to me that that is a significant change between the testimony at the hearing on the suppression motion and the testimony at trial. That change being at the time of the suppression hearing the Defendant could not, allegedly could not remember having his rights explained to him; whereas, at trial the Defendant testified that he did.

"Officer Tucker read you your rights, didn't he?"

"Yes. He did."

Now, I find that that [sic], number one, was a material change; and, number two, that it was willful; and, therefore, I find that the Defendant attempted to obstruct justice in terms of the testimony that he gave at his suppression hearing. Just, to me, having seen him testify, having heard him testify, it's as plain as the nose on anybody's face that when he was in here at the suppression hearing, he was claiming to have a faulty memory about what happened when he was interviewed and that that faulty

memory suddenly and without any explanation was cleared up when he testified at trial. Nothing said at the trial about not remembering. Nothing said about being high on cognac and marijuana.

Record, Vol. VII, Doc. 89 at 8–9.

The prosecution took the same position at the sentencing hearing, arguing that Appellant's testimony at the suppression hearing was "completely incredible:"

I think the [c]ourt correctly found that the Defendant's statement was completely incredible at the pretrial motions hearing and the [c]ourt heard the testimony of the Defendant and his cousin at the trial; and as we pointed out in here, not only his statements about Miranda rights, which the [c]ourt pointed out were completely incredible at the hearing, there was also the testimony that—from Officer Tucker that the Defendant had admitted to engaging in drug trafficking and then took the stand at both the suppression hearing and the trial and denied it.

Record, Vol. VII, Doc. 89 at 3. Defense counsel then proceeded to argue that Appellant's statement did not constitute an obstruction of justice, that he disagreed with the government's position and con-

1. The relevant exchange between Assistant United States Attorney Lind and Appellant was as follows:

Q (By Mr. Lind) Now, you talked about your statement you made to Officer Tucker. Officer Tucker read you your rights, didn't he?
A Yes, he did.
Q And you understood your rights?
A Uhm, I'm not sure I did.
Q Well, you've had your rights read to you before; right?
A Yes, I have.
Q And you know what your rights are?
A Yes, I do.
Q And you signed that form that says that these are your rights and you waived your rights. Is that right?

A Yes, but that doesn't give him the right to put down what he wants on a statement and say that those were my words.
Q Okay. You signed this?
A Uh-huh.
Q And you agreed to talk to him?
A Yes.
Q So you voluntarily talked to him?
A Yes.
Q When you started talkin' to him, you're saying that—you told him you were unemployed. That was true?
A True.
Record, Vol. VI, Doc. 88 at 340–341.

tended "I don't think the question of whether or not the [c]ourt believed the testimony should be the issue here. It's simply an issue of whether or not my client had exercised the right to defend himself and whether or not he should be punished for having exercised that right." *Id.* at 4–5.

We think that all of this is beside the point. It is hornbook law that a defendant has an absolute right to mount a maximum defense to any criminal charge, including making a pre-trial motion to suppress evidence or statements. The cumulative experience of the judiciary indicates that on occasion a defendant succeeds in obtaining an order of suppression on the theory that the government has not turned square corners. *See United States v. Wood,* 879 F.2d 927, 937 (D.C.Cir.1989) (citing *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 387–388, 68 S.Ct. 1, 92 L.Ed. 10 (1947)). But that right, as absolute as it is, does not permit a defendant to play fast and loose with the court. One cannot utilize the resources of the judicial process to deliberately lie under oath and contest the government's position on an issue that lies at the heart of a motion to suppress. One cannot do this, in the language of ancient common law, without suffering "pains and penalties," which, in this case, is an enhancement of the sentence.

We find ourselves in an era where district courts, horribly understaffed in judicial resources, are treading water in valiant efforts to mete out justice notwithstanding the constant increase of inordinate case loads. Courts are faced with the almost insurmountable challenge of meeting the deadlines imposed by the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.,* while straining to juggle individual calendars to accommodate juror calls. At the same time, our Article III colleagues must remain vigilant in protecting the rights of those whom society has accused of crimes, while simultaneously accommodating the claims, wants and demands of the social order. In the face of the deluge inundating the federal court system, there can be no free ticket, no free ride for a defendant who abuses that system. Such an individual must pay a price. Making a motion *in limine* that is based on lies and falsehoods, and then demanding and participating in an evidentiary hearing that reeks of prevarication, not only insults the judicial process, but also "willfully ... impede[s], or attempt[s] to ... impede, the administration of justice...." U.S.S.G. § 3C1.1 (2001). Ronald Alexander did exactly that in this case.

■■■ Appellant's actions forced the federal judicial system to squander the energies of an Article III judge, his chambers staff, the courtroom attachés, the Clerk's Office personnel, the U.S. Marshals and the U.S. Attorney's professional and support staff. All of these resources were expended as the result of a sham proceeding that delayed the trial in this case for at least a month, thereby impeding the judicial system because it did "interfere with or get in the way of" the administration of justice. Although Appellant's counsel argues that any defendant has a right to defend himself, "a defendant's right to testify does not include a right to commit perjury." *United States v. Dunnigan,* 507 U.S. 87, 96, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993).

For these transgressions, Congress has set a price that Appellant must pay—enhancement of his sentence. For these reasons we hold that the district court did not err in enhancing his sentence under U.S.S.G. § 3C1.1.

\* \* \* \* \* \*

We base our decision on the simple fact that Appellant "impeded" the administration of justice by delaying the trial and subsequent sentencing by initiating a sham

proceeding during which Appellant repeatedly uttered falsehoods under oath. We have decided to utilize this avenue to ground our reasoning, rather than on the basis of "obstructing" justice by reason of perjury at the suppression hearing. This is not to say that we could not affirm on that basis, as suggested by the government. However, in this case, we have deliberately decided not to go that route because it is not necessary. We exercise this hesitation because most, if not all, cases imposing the enhancements under § 3C1.1 for stating falsehoods under oath regarding a material fact relate to statements made at trial, rather than at a suppression hearing. Thus, in *United States v. Dunnigan,* the Court stated: "The question presented is whether the Constitution permits a court to enhance a defendant's sentence under United States Sentencing Commission, Guidelines Manual § 3C1.1 (Nov. 1989), if the court finds the defendant committed perjury *at trial.*" *Dunnigan,* 507 U.S. at 88–89, 113 S.Ct. 1111 (emphasis added). *See, e.g., United States v. Chavez,* 229 F.3d 946, 954–955 (10th Cir.2000); *United States v. Copus,* 110 F.3d 1529, 1536–1537 (10th Cir.1997); *United States v. Markum,* 4 F.3d 891, 897–898 (10th Cir.1993). This may be a distinction without a difference, but we reserve consideration of that issue for another time.

The judgment of the district court is affirmed.