**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 17 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JANET MARIE CLINE,

    Defendant - Appellant.

No. 02-3359
(D.C. No. 00-40024-22-SAC)
(D. Kansas)

**ORDER AND JUDGMENT** *

Before **KELLY** , **BRISCOE** , and **LUCERO** , Circuit Judges.

We consider a challenge to the district court's imposition of a two-level

enhancement under U.S.S.G. § 2D1.11(b)(1) for possessing a firearm in

connection with an offense following a defendant's conviction of interstate travel

in aid of a racketeering enterprise in violation of 18 U.S.C. § 1952(a)(3).

Exercising jurisdiction under 18 U.S.C. § 3742(a), we affirm.

---

\* The case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In late 1998 and early 1999, Kansas and federal authorities targeted several businesses suspected of being part of a drug-trafficking organization. Cline owned and operated one of these businesses, a lingerie store named Romantic Delights in Baxter Springs, Kansas, that agents believed to be selling large amounts of pseudoephedrine, a precursor chemical to the manufacture of methamphetamine. After Cline's store sold large amounts of pseudoephedrine to undercover agents, on March 27, 2000, the authorities executed a search warrant on her home in Quapaw, Oklahoma, approximately thirteen miles from the store. During the search, officers seized approximately sixteen firearms, including a loaded Glock 9mm semi-automatic weapon found in Cline's purse. Various items relating to the Romantic Delights business were located near the purse, including store receipts and a bank deposit bag containing cash proceeds from the business. Further investigation revealed that Cline had sold cases of pseudoephedrine to co-defendants Shane and Tracy Wright and knew that the Wrights were using the pseudoephedrine to manufacture methamphetamine.

Cline, along with nineteen other individuals, was named in a seventy-seven count federal indictment filed on October 5, 2000. On February 20, 2002, in exchange for the dismissal of the other counts, Cline pled guilty to a single-count information charging her with interstate travel with the intent to promote the unlawful distribution of pseudoephedrine, knowing or having reasonable cause to

believe that it would be used to manufacture methamphetamine, in violation of 18 U.S.C. § 1952(a)(3).

The presentence report calculated a base offense level of twenty-four, based on the 1,534 grams of pseudoephedrine involved in the matter. It then deducted three points for Cline's acceptance of responsibility and guilty plea and added two points for the firearm found in her purse during the search of her residence, resulting in a total offense level of twenty-three. After a hearing, the sentencing court denied Cline's objection to the weapon enhancement. Cline was sentenced on September 17, 2002, to a forty-six month term of imprisonment and now appeals the denial of her objection to the weapon enhancement.

We review factual findings underlying the application of a weapon enhancement for clear error and give due deference to the application of the Guidelines to the facts; we review purely legal questions de novo. United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999).

Section 2D1.11(b)(1) of the Sentencing Guidelines provides that the base offense level will be increased by two points "[i]f a dangerous weapon (including a firearm) was possessed." The Application Notes explain, "[t]he adjustment . . . should be applied if the weapon was present, unless it is improbable that the weapon was connected with the offense." Id. cmt. 1. Given "the dearth of case law interpreting this guideline," we "seek guidance from the cases interpreting

-3-

U.S.S.G. § 2D1.1(b)(1), which contains identical language." United States v. Anderson , 61 F.3d 1290, 1304 n.13 (7th Cir. 1995).

In weapon enhancement cases, "[t]he initial burden is on the government to prove possession of the weapon by a preponderance of the evidence." United States v. Alexander , 292 F.3d 1226, 1231 (10th Cir. 2002) (quotation omitted). Once the government satisfies this by establishing "that a temporal and spatial relation existed between the weapon, [the offense], and the defendant, or, in other words, mere proximity to the offense . . . the burden shifts to the defendant to show that it is clearly improbable the weapon was connected with the offense." United States v. Pompey , 264 F.3d 1176, 1180–81 (10th Cir. 2001) (quotations omitted).

We conclude that the district court did not clearly err in finding that the government satisfied its initial burden. At the change-of-plea hearing, the government stated that it would have established the following facts:

> With regard to the interstate travel element of the information, we would have offered evidence that the defendant's business, Romantic Delights, was located in Kansas; the defendant's residence was located in Quapaw, Oklahoma. . . . The government submits that the defendant travelled on a regular basis between her business in Kansas and her residence in Oklahoma, where substantial documents and cash related to her business were found that would satisfy the interstate travel element and provide the Court with a basis for approving the information that was filed.

(6 R. at 18–19.)  Imposing the two-level weapon enhancement, the district court relied on the following:  (1) the proximity between the gun and various items relating to the Romantic Delights business; (2) photographs taken during the search and submitted at the sentencing hearing showing that Cline's purse, in which the gun was found, was situated on the same chair with a larger cloth bag on top of which was a bank deposit bag, and that the bank deposit bag contained more than $1,500 in cash; and (3) Cline's concession that she carried the gun for protection when she traveled with the cash proceeds from her business.

Based on this evidence, the district court reasonably inferred that Cline possessed the gun during the offense for which she was charged—interstate travel to promote the sale of pseudoephedrine, knowing or having reasonable cause to believe that such sales would be used in the production of methamphetamine.  It found:

> Because the defendant regularly traveled between her Kansas business and her Oklahoma residence taking with her different documents and cash related to her business, because a part of Romantic Delights' business was the illegal sale of pseudoephedrine and the proceeds from which were commingled with its other sales, and because the defendant carried the firearm as protection during her travels to and from work, the court concludes that the defendant possessed the loaded weapon for the purpose of protecting herself and the proceeds of her business which included the illegal sales of pseudoephedrine.

<u>United States v. Cline</u>, No. 00-40024-22-SAC, slip op. at 10–11 (D. Kan. Aug. 28, 2002).  The district court was not clearly erroneous in concluding that the government satisfied its initial burden.

On appeal, Cline does not proffer any evidence suggesting that the connection between the weapon and the offense for which she was convicted is improbable.  Rather, she merely argues that the government's evidence was insufficient to support the district court's findings.  In the absence of clear error, we **AFFIRM.**  The mandate shall issue forthwith.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge