**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 4, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

HECTOR MOREIRA,

      Defendant - Appellant.

No. 07-3307
(D. Ct. No. 06-CR-20021-KHV-JPO)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **HOLLOWAY**, and **HOLMES**, Circuit Judges.

---

      Defendant-Appellant Hector Moreira pleaded guilty to one count of conspiracy to possess with intent to distribute fifty grams or more of methamphetamine, 500 grams or more of a substance containing cocaine, and a quantity of marijuana, all in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He further pleaded guilty to seven other drug-trafficking counts and was sentenced to life imprisonment. On appeal, he challenges the district court's application of several enhancements and adjustments to his base offense level, and he asserts that the district court failed to consider properly the sentencing factors in 18 U.S.C. § 3553(a). We have jurisdiction under 28 U.S.C. § 1291 and 18

---

    [*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

U.S.C. § 3742(a), and we AFFIRM.

## I. BACKGROUND

Beginning in November 2005, agents with the Drug Enforcement Agency ("DEA") began investigating Mr. Moreira's involvement in drug trafficking in Kansas City, Kansas. As a result, and with the cooperation of confidential sources, agents executed several controlled buys of methamphetamine from individuals associated with Mr. Moreira. In at least two of those buys, the confidential sources contacted Mr. Moreira directly and asked about purchasing drugs. Mr. Moreira then directed the confidential sources to a specific location, where another Hispanic male distributed the drugs to the confidential sources.

DEA agents conducting surveillance also witnessed other drug transactions involving Mr. Moreira. As with the controlled buys, the purchasers first contacted Mr. Moreira with their order. Mr. Moreira then directed the purchaser to the sale place, where Hispanic men would meet the purchaser and sell him the drugs. The purchasers told DEA agents that they had bought narcotics in this manner several times in the past. Agents also obtained statements from other purchasers who confirmed the distribution scheme.

In January 2006, a confidential source told agents that he had purchased drugs at a residence on 16th Street in Kansas City, Kansas approximately five times in the last three months. Agents knocked on the front door of the house and were greeted by Edguar Lizardo-Figueroa, one of the individuals who made deliveries of drugs that had been ordered through Mr. Moreira. Mr. Lizardo-Figueroa consented to a search of the house,

which uncovered marijuana, cocaine, and methamphetamine in the kitchen.  A firearm was found in an air duct in the ceiling of the living room next to the kitchen.  Another firearm was found in a bedroom closet.

Days after the search, agents attempted to arrest Mr. Moreira.  A confidential source contacted Mr. Moreira, and they agreed to meet at an auto parts store.  Once Mr. Moreira arrived, Kansas City police officers in unmarked patrol cars activated their lights and attempted to blockade his vehicle.  Mr. Moreira, however, managed to evade the blockade and drove away.  Officers pursued him for a short distance until they decided to cease their high-speed chase due to concern for public safety.

In April 2006, agents observed Mr. Moreira enter a residence on Bunker Avenue in Kansas City, Kansas.  A confidential source called Mr. Moreira and said he had some money for him.  Mr. Moreira instructed the confidential source to come over to the house and asked if he "wanted anything."  About thirty minutes later, the confidential source arrived, and agents then forced their way into the residence.  They contacted one of the residents, co-defendant Alberto Perez-Jacome, in the kitchen.  Mr. Moreira fled through the back door but was apprehended shortly thereafter.  Agents found a variety of drugs and drug paraphernalia in the kitchen, both bedrooms, and family room.  They found an AK-47 assault rifle, an SKS Norinco assault rifle, and four handguns in the ceiling area of the kitchen and family room.

Mr. Moreira and twelve others were subsequently charged in a twenty-one-count indictment alleging, among other offenses, narcotics possession, distribution, and

conspiracy.  The morning his trial was scheduled to begin, Mr. Moreira pleaded guilty to one count of conspiracy to possess with the intent to distribute fifty grams or more of methamphetamine, 500 grams or more of a substance containing cocaine, and a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; four counts of distributing or possessing with the intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; one count of distributing five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; one count of possessing with the intent to distribute 500 grams or more of a substance containing cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and one count of possessing with the intent to distribute a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

The presentence report ("PSR") attributed at least 1.5 kilograms of actual methamphetamine to Mr. Moreira, setting his base offense level at thirty-eight.  U.S.S.G. § 2D1.1(a)(3), (c)(1).  The PSR recommended, and the district court ultimately applied, a two-level enhancement for possessing a firearm, *see* U.S.S.G. § 2D1.1(b)(1), a four-level upward adjustment for being a leader or organizer, *see* U.S.S.G. § 3B1.1(a), a two-level upward adjustment for recklessly creating a substantial risk of death or serious bodily injury during the course of fleeing from a law enforcement officer, *see* U.S.S.G. § 3C1.2, and a two-level downward adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a).  This produced a total offense level of forty-four with a resulting advisory Guidelines sentence of life imprisonment.  The district court sentenced Mr. Moreira to

life.  On appeal, he challenges the four enhancements and adjustments.

## II.  DISCUSSION

### A.     Role in the Offense Adjustment

In his summary of the argument in his brief, Mr. Moreira states that there is insufficient evidence to support the role in the offense adjustment.  In the argument section, however, Mr. Moreira does not mention this claim.  Thus, we deem the issue waived.  *See Christian Heritage Academy v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031 (10th Cir. 2007) ("Where an appellant lists an issue, but does not support the issue with argument, the issue is waived on appeal.").

### B.     Firearms Enhancement

Section 2D1.1(b)(1) of the Guidelines provides for a two-level specific-offense enhancement for drug trafficking offenses "[i]f a dangerous weapon (including a firearm) was possessed" during commission of the offense.  The commentary to that section states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1(b)(1), cmt. n.3.  Under this framework, the government bears the initial burden to prove possession by a preponderance of the evidence, and possession may be established by a showing that the weapon was in physical proximity to the offense.  *See United States v. Heckard*, 238 F.3d 1222, 1233 (10th Cir. 2001); *United States v. Roberts*, 980 F.2d 645, 647 (10th Cir. 1992).  In the context of drug trafficking offenses, we have held that "[t]he necessary nexus between the weapon, drug trafficking and defendant may be established

by showing that the weapon was located nearby the general location where drugs or drug paraphernalia are stored." *United States v. Alexander*, 292 F.3d 1226, 1231 (10th Cir. 2002) (quotations omitted).

Moreover, in the case of jointly undertaken criminal activity such as the narcotics conspiracy to which Mr. Moreira pleaded guilty, the district court must consider all reasonably foreseeable acts of others in furtherance of the criminal activity when applying sentencing enhancements. *See* U.S.S.G. § 1B1.3(a)(1)(B). Thus, a sentencing court must "attribute to a defendant weapons possessed by his co-defendants if the possession of weapons was known to the defendant or reasonably foreseeable by him." *United States v. McFarlane*, 933 F.2d 898, 899 (10th Cir. 1991). *See also United States v. Humphrey*, 208 F.3d 1190, 1210 (10th Cir. 2000) ("Because [the defendant] has been convicted of conspiracy, the straightforward application of the Guidelines provision authorizes the increase in offense level even if the gun was actually possessed only by [a co-conspirator]; in a drug conspiracy conviction the adjustment should be applied unless it is clearly improbable that the weapon was connected with the conspiracy offense.").

In this case, the government demonstrated, and Mr. Moreira does not dispute, that firearms and a large quantity of drugs were found (1) at the 16th Street residence which was occupied and rented by Mr. Moreira's convicted co-conspirator Mr. Lizardo-Figueroa; and (2) at the Bunker Avenue residence which was occupied and rented by Mr. Moreira's convicted co-conspirator Mr. Perez-Jacome. In both houses, the guns were located near the drugs and drug paraphernalia. Thus, it is clear that the firearms were, at

the very least, possessed by Mr. Moreira's co-conspirators. *See Alexander*, 292 F.3d at 1231–32. Mr. Moreira argues, however, that Mr. Lizardo-Figueroa's and Mr. Perez-Jacome's possession of firearms was not reasonably foreseeable to him because he was not a lessee of either residence, the firearms were not in plain view, and the firearms were not used during any individual drug transactions. We disagree. We have previously affirmed application of the § 2D1.1(b)(1) firearms enhancement in a drug conspiracy case despite the defendant's contention that she did not have actual knowledge of the weapon and when there was no evidence the weapon was used during a sale, reasoning that the scope of the conspiracy and the defendant's relationship with her co-conspirator supported the district court's finding that the possession of the firearm was reasonably foreseeable. *See Humphrey*, 208 F.3d at 1211. That reasoning is persuasive here. Both Mr. Lizardo-Figueroa and Mr. Perez-Jacome acted under Mr. Moreira's direction to distribute narcotics as part of the conspiracy, and weapons were found in their residences in close proximity to narcotics. Additionally, the district court heard testimony from a DEA agent that large narcotics traffickers almost always carry weapons with them for personal protection and to protect the drugs. Given those facts, we cannot say the district court committed clear error in finding that the co-conspirators' possession of the firearms was reasonably foreseeable to Mr. Moreira. *See id. See also United States v. Underwood*, 982 F.2d 426, 429 (10th Cir. 1992) (concluding that co-defendants' possession of firearms was reasonably foreseeable to the defendant in part because the firearms were found on a marijuana farm supervised by the defendant).

C.      Enhancement for Reckless Endangerment During Flight

Section 3C1.2 provides for a two-level enhancement "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." A defendant acts recklessly for purposes of this enhancement when he "was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." *United States v. Conley*, 131 F.3d 1387, 1389 (10th Cir. 1997). A high-speed car chase such as the one initiated by Mr. Moreira satisfies this standard. *See id.* at 1389–90.

D.      Downward Adjustment for Acceptance of Responsibility

Section 3E1.1 states:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a) . . . and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

At sentencing, the district court found that Mr. Moreira had accepted responsibility for his offenses and decreased his offense level by two points under § 3E1.1(a). The government did not move for an additional one-point adjustment under § 3E1.1(b) and the court accordingly did not grant one. Both the government and the court noted that the

- 8 -

government had not been spared the expense of preparing for trial, as Mr. Moreira did not plead guilty until the morning his trial was scheduled to begin.

On appeal, Mr. Moreira contends that he waited to plead guilty until his trial date only because the government had previously refused to debrief him until that point. He argues, without legal citation, that "it is inappropriate to permit the government's obduracy to serve as a base from which he can be deprived of the third level for acceptance of responsibility." We have held, however, that a sentencing court "can review the government's refusal to file a Section 3E1.1(b) motion and grant a remedy if it finds the refusal was (1) animated by an unconstitutional motive, or (2) not rationally related to a legitimate government end." *United States v. Moreno-Trevino*, 432 F.3d 1181, 1186 (10th Cir. 2005) (quotations omitted). In this case, Mr. Moreira does not claim that the government's decision not to seek an additional one-point downward adjustment was animated by an unconstitutional motive or that it was not related to a legitimate government end. Therefore, we do not have the authority to review it.

E.     Consideration of 18 U.S.C. § 3553(a) Factors

In his brief's statement of the issues, summary of the argument, and in a heading in his argument section, Mr. Moreira asserts that the district court failed to consider properly the sentencing factors set forth in 18 U.S.C. § 3553(a). He does not, however, support this assertion with substantive argument or citation to the record. Indeed, Mr. Moreira does not mention a single § 3553(a) factor that the district court allegedly failed to consider, and he does not explain how the district court's selection of his sentence

involved an improper application of § 3553(a).   Because Mr. Moreira has not supported

this blanket assertion with argument, we deem the issue waived.  *See Christian Heritage*

*Academy*, 483 F.3d at 1031.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM.


ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge