F I L E D
United States Court of Appeals
Tenth Circuit

JAN 21 2003

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

STEVEN JEROME HAWTHORNE,

Defendant - Appellant.

No. 01-3357

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 00-CR-20116-01-KHV)**

---

Benjamin N. Casad, of Strong & Casad, Kansas City, Kansas, for Defendant-Appellant.

Leon J. Patton, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), Kansas City, Kansas, for Plaintiff-Appellee.

---

Before **HENRY** , Circuit Judge, **BRORBY** , Senior Circuit Judge, and **HARTZ** , Circuit Judge.

---

**HARTZ** , Circuit Judge.

An August 17, 2000, indictment charged Defendant, Steven Hawthorne, with possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and with possession of a firearm after a felony conviction, in violation of 21 U.S.C. § 922(g). He filed a motion to suppress certain incriminating statements that he had made to law enforcement officers, contending that his confession was not voluntary. Following an evidentiary hearing, the district court denied the motion. Defendant then entered an unconditional guilty plea.

Finding that Defendant had committed perjury during the suppression hearing, the district court enhanced his sentence for obstruction of justice under United States Sentencing Guideline (U.S.S.G.) § 3C1.1, and declined to reduce his sentence for acceptance of responsibility under U.S.S.G. § 3E1.1. Defendant challenges the enhancement under § 3C1.1, claiming that (1) the district court failed to make factual findings adequate to support the enhancement; (2) his testimony during the suppression hearing was not perjurious; and (3) enhancements under § 3C1.1 should not be imposed for perjury committed during suppression hearings. He also appears to challenge the district court's failure to reduce his sentence in accordance with U.S.S.G. § 3E1.1. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

**Background**

The Kansas City, Kansas Police Department (KCKPD) learned that Defendant was selling crack cocaine from a house in Kansas City. On the evening of July 19, 2000, KCKPD officers conducted a search of the house, with federal agents providing assistance. After finding two handguns, marijuana, cocaine residue, and drug paraphernalia in the house, the officers arrested Defendant at about 7:00 or 8:00 p.m. A search of his pockets yielded marijuana and a small quantity of crack cocaine.

The officers took Defendant to the county jail. At about 10:45 a.m. on July 20, FBI Special Agent Gary Violanti and KCKPD Officer Jose Viera began to question Defendant. What happened during the interrogation was a matter of dispute at the suppression hearing. Defendant contended that his "statements were not voluntarily and willfully made." ROA, Vol. 2 at 43. He alleged that the officers' primary purpose in interrogating him was to collect information for an investigation about another, more significant drug dealer, Cecil Brooks. Defendant made the following factual representations in his testimony: (1) he told the officers that he wanted a lawyer; (2) the officers said they would get a lawyer for him; (3) he was intoxicated at the time of his interrogation, having smoked marijuana and crack an hour before his arrest; (4) the officers' body language showed that they knew he was tired and not functioning well; (5) the

officers threatened him by saying that he would face 15 to 20 years in prison if he lied to them about Cecil Brooks; (6) the officers told him he could go home if he provided truthful answers to their questions about Brooks; and (7) he had learned much of the information that he gave the officers regarding Brooks from reading the newspaper.

Of particular significance was Defendant's claim that he wanted a lawyer. If a suspect in the course of custodial interrogation requests a lawyer, all questioning must cease until a lawyer is obtained or the suspect spontaneously reinitiates the conversation. *Davis v. United States*, 512 U.S. 452, 458 (1994). But the request for a lawyer must be unambiguous. If a suspect makes an ambiguous statement about wanting a lawyer, the interrogating officers have no duty to stop the questioning or even to seek clarification from the suspect about his interest in seeing a lawyer. *Id*. at 459, 461-62.

According to the officers, at the start of the interview they handed Defendant a form entitled "Interrogation Advice of Rights and Waiver of Rights," which listed the *Miranda* rights. They asked Defendant to read the form aloud. When Defendant reached the portion of the form which states, "You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning," he declared, "I may want a lawyer." ROA, Vol. 2 at 8, 22-23, 34. He then continued to read from the form. After he

finished reading it, he said, "I don't want a lawyer, I'll sign the form." *Id*. at 9, 23-24. He signed the *Miranda* rights waiver and proceeded to make incriminating statements to the two officers. Agent Violanti testified that once Defendant had executed the waiver, he never expressed a desire to stop talking to the investigators, and he never requested a lawyer.

In addition, the officers denied that they had engaged in any coercive conduct to induce Defendant to waive his *Miranda* rights. While the officers acknowledged that one of the reasons they questioned Defendant was to acquire information about Brooks, they disputed Defendant's contention that they promised to release him if he provided such information. They also said that Defendant seemed to be mentally alert at the time he signed the rights waiver.

At the conclusion of the suppression hearing, the district court declared that it found "by a preponderance of the evidence that the statements which the defendant gave were free and voluntary." *Id*. at 47. The court first observed that Defendant had "prior experience within the criminal justice system" and that the record failed to show that Defendant possessed any intellectual deficiencies which would interfere with his comprehension of his rights. *Id*. It then made the following comments concerning the evidence about the interrogation:

> [T]here's no evidence of any threats or coercion. Apparently, this interview had progressed only five minutes between the time the defendant was called out and the time he signed the form waiving his rights. The court does find that the officers' testimony is credible

when they say that during the course of the examination, Mr. Hawthorne stated that he might want an attorney. But by the time he finished reading the waiver of rights form, he had elected not to proceed—not to request an attorney and to proceed without counsel.

While the evidence suggests that Mr. Hawthorne may have consumed drugs or alcohol at 8 o'clock, 7 or 8 o'clock in the evening of the prior day, there's no credible evidence that anything about the drug use rendered him mentally incompetent at the time he made the statements to the officers the following day, and I don't accept the proposition that he was intoxicated in any legally meaningful sense of that word.

Also, I don't find credible his testimony that he did ask for a lawyer during the reading of his rights form. Therefore, the motion to suppress is overruled.

*Id*. at 47-48.

After the district court denied Defendant's motion to suppress, he entered a guilty plea. At the sentencing hearing on September 17, 2001, the Government alleged that Defendant had committed perjury during the suppression hearing and requested that the district court impose a two-level enhancement for obstructing justice, under U.S.S.G. § 3C1.1, and that the district court not allow a sentence reduction for acceptance of responsibility, under U.S.S.G. § 3E1.1.

The Government argued that Defendant had perjured himself with respect to two subjects. The first was Defendant's assertion that he had requested an attorney at the outset of his interrogation. The Government explained as follows:

[T]his court had a hearing on the defendant's motion to suppress his statements, and it was based upon his claims that he had been questioned in violation of his right to an attorney. In fact, . . .

-6-

Gary Violanti who testified here this day testified that although he had at one point stated that he might want an attorney, that after he read all of his rights, he said that he would go ahead and consent.

. . . .

This court denied and overruled his motion because Mr. Hawthorne did not tell the truth. . . .

ROA, Vol. III at 53-54. The second subject was the conduct of Cecil Brooks.

The district court ruled on the Government's request at the continuation of the sentencing hearing on October 22. It agreed that a sentence enhancement was appropriate for the first lying but not the second. It said:

> The court also finds that an obstruction—the adjustment for obstruction of justice is warranted in this case. I agree with defense counsel that the testimony of, regarding Mr. Brooks is probably not particularly material here, although I believe that the defendant lied about it. But I don't think it would warrant an enhancement for obstruction because I don't think it's sufficiently related to the crime of conviction.

> I do think, though, that, Mr. Hawthorne, that you lied in your testimony at the suppression hearing about the voluntariness of the statements that you made to the officers, and I don't believe that to hold you accountable for an obstruction of justice is in any way punishing you for exercising your constitutional rights to bring these matters to the court's attention.

> No. 1, there's other ways to bring the court's attention without going to court and testifying falsely under oath, and nobody has a constitutional right to testify falsely. You know, when somebody files a motion to suppress a statement, the court takes that very seriously. You have a hearing, and the only thing that we really have to go on when we're setting those kinds of hearings and taking, and undertaking that kind of inquiry is the claim that the defendant is making as to the voluntariness of the statement which is made. And

so when people lie about that, then it puts the government and the court to a lot of effort and time for no legitimate purpose. And I don't have any hesitation at all in concluding that your testimony was willfully false and that a two-level adjustment for obstruction is warranted in this case.

Supp. ROA at 2-3.

The district court applied U.S.S.G. § 3C1.1 to impose a two-level sentencing enhancement for obstructing justice. The district court also denied Defendant's motion for a downward departure for acceptance of responsibility, under U.S.S.G. § 3E1.1. Defendant challenges these sentencing decisions in his appeal.

**Discussion**

Before turning to the merits, we note that both parties devoted substantial portions of their briefs to whether the district court improperly denied Defendant's motion to suppress. As Defendant's attorney made clear at oral argument, however, he does not seek reversal of the district court's denial of the suppression motion. He acknowledges that Defendant entered an unconditional guilty plea, and "entry of an unconditional guilty plea results in the waiver of all nonjurisdictional defenses." *United States v. Robertson*, 45 F.3d 1423, 1434 (10th Cir. 1995).

We therefore need address only issues relating to Defendant's sentence. In considering challenges to sentencing enhancements under § 3C1.1, "[w]e review

the district court's factual findings as to the obstruction of justice under the clearly erroneous standard, and review *de novo* the district court's legal interpretation of the Sentencing Guidelines." *United States v. Hawley*, 93 F.3d 682, 686-687 (10th Cir. 1996). Similarly, "[w]e review for clear error the district court's refusal to grant a reduction in offense level for acceptance of responsibility." *Id.* at 689.

      1.     *Sentencing enhancement under  § 3C1.1*

U.S.S.G. § 3C1.1 states:

> If (A) the defendant willingly obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

The commentary to § 3C1.1 provides "a non-exhaustive list of examples of the types of conduct to which this adjustment applies." U.S.S.G. § 3C1.1, cmt. (n.4). The list includes "committing, suborning, or attempting to suborn perjury." *Id.* cmt. (n.4(b)).

The United States Supreme Court addressed the imposition of § 3C1.1 enhancements for perjury in *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). The Court stated that in the context of § 3C1.1, perjury takes place when "[a] witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as

a result of confusion, mistake, or faulty memory." *Id.* at 94 (citing the definition of perjury set forth in the federal perjury statute, 18 U.S.C. § 1621). The opinion stressed that "not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury." *Id.* at 95. For example, when a defendant testifies about "matters such as lack of capacity, insanity, duress, or self-defense . . . [h]er testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent." *Id.* Therefore, "if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out." *Id.*

Defendant attacks the enhancement on three grounds: (1) the district court's findings were inadequate; (2) he did not commit perjury; and (3) perjury at a suppression hearing is an improper ground for enhancement. We discuss each in turn.

a. *Adequacy of the court's findings*

We first address Defendant's challenge to the adequacy of the district court's findings regarding his perjury. *Dunnigan* provides some guidance regarding the type of factual findings that district courts must make in order to

enhance sentences under § 3C1.1. The opinion states that while "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding," it "is sufficient . . . if . . . the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id.* at 95.

The Tenth Circuit's standards are stricter than those expressed in *Dunnigan*. We require that a district court be explicit about which representations by the defendant constitute perjury. In *United States v. Massey*, 48 F.3d 1560, 1573 (10th Cir. 1995), we observed that "although *Dunnigan* did not require sentencing judges specifically to identify the perjurious statement, it has long been a requirement in the Tenth Circuit that the perjurious statement be identified, at least in substance." The *Massey* court clarified that it did "not mean to imply that the district court must recite the perjurious testimony verbatim," but rather that the district court could "generally identify the testimony at issue . . . so that when we review the transcript we can evaluate the *Dunnigan* findings of the elements of perjury against an identified line of questions and answers without having simply to speculate on what the district court might have believed was the perjurious testimony." *Id.* at 1574.

Although greater specificity by the district court would have been helpful, and is strongly recommended for the future, we hold that, in context, the court's

findings here were adequate to satisfy *Dunnigan* and *Massey*. We begin with consideration of the *Dunnigan* requirements. The district court found all three elements of the offense of perjury: (1) a false statement under oath, (2) concerning a material matter, (3) with the willful intent to provide false testimony. *See Dunnigan*, 507 U.S. at 94. A finding on the first element (making a false statement) is encompassed by the court's remark: "I do think . . . Mr. Hawthorne, that you lied in your testimony at the suppression hearing about the voluntariness of the statements that you made to the officers." Supp. ROA at 2. The third element (willful intent) was clearly found when the court stated at the sentencing hearing that "I don't have any hesitation at all in concluding that your testimony was willfully false." *Id*. at 3.

As for the second element (materiality), the district court implicitly found that Defendant's testimony about the voluntariness of his confession was material. The court declined to impose an enhancement for Defendant's statements about Brooks, noting that "the testimony . . . regarding Mr. Brooks is probably not particularly material here, although I believe that the defendant lied about it." *Id*. at 2. In contrast, shortly thereafter the district court declared that Defendant's testimony concerning the voluntariness of his statements did warrant a sentencing enhancement. The court's distinction between the two areas of testimony establishes that it found the testimony about voluntariness to be material.

The more difficult question is whether the court complied with *Massey* by adequately identifying which of Defendant's statements were perjurious. At the sentencing hearing the court observed only that Defendant "lied in [his] testimony at the suppression hearing about the voluntariness of the statements that [he] made to the officers." *Id.* Given that the central issue for resolution at the suppression hearing was whether Defendant's confession was voluntary, this comment could have been referring to almost any part of Defendant's testimony.

In context, however, it is clear that the court's comment was referring to only one part of that testimony. As Defendant's brief accurately states, "The prosecution [at the sentencing hearing] represented the defendant's arguments concerning voluntariness of the waiver as if the only issue was whether or not his request for an attorney had been equivocal or unequivocal." Aplt. Br. at 23. The Government sought an enhancement because of Defendant's perjury concerning (1) whether Defendant had requested an attorney and (2) the possible drug dealing of Cecil Brooks. When the court ruled that Defendant had lied on both matters but only the testimony on "voluntariness" warranted an enhancement, it was surely using the word "voluntariness" to refer to the testimony about requesting an attorney.

This conclusion is reinforced by an examination of what the court said at the suppression hearing. In explaining its ruling at that hearing, the district court

addressed the three bases of Defendant's claim that his confession was involuntary. First, the district court rejected Defendant's claim that the officers had used threats to induce him to waive his *Miranda* rights. The court said, "[T]here's no evidence of any threats or coercion." ROA, Vol. 2 at 47-48.

Second, with regard to Defendant's claim that he was mentally incompetent to waive his rights, the district court stated, "I don't accept the proposition that he was intoxicated in any legally meaningful sense of that word." *Id*. at 48. Although the court commented that there was "no credible evidence" that Defendant had been incapacitated by drugs, we do not take this comment as a reflection on Defendant's veracity. On the contrary, the court believed, or at least assumed, that Defendant had consumed drugs or alcohol shortly before his arrest. The court's focus was apparently on the absence of any significant impairment by the time of the interrogation.

Finally, in rejecting Defendant's claim that he had requested a lawyer, the district court said that it did not "find credible his testimony that he did ask for a lawyer during the reading of his rights form." *Id*. The court did find credible the officers' testimony that Defendant had said only that he might want a lawyer. As stated in Defendant's opening brief, "The Court found that the request had been equivocal and that the defendant had lied when he testified that his request had been unequivocal." Aplt. Br. at 23.

Thus, we conclude that the district court's reference at sentencing to lying by Defendant "about the voluntariness of [his] statements" must relate to Defendant's testimony that he had asked for a lawyer. Accordingly, we hold that the specificity requirement of *Massey* was satisfied. We emphasize again, however, that it would have been preferable if the court had been more precise.

b. *Whether Defendant committed perjury*

Defendant next argues that his testimony was not in fact perjurious. He characterizes his testimony as "a good faith attempt to explain his interpretation of the circumstances under which he signed a waiver of rights." Aplt. Br. at 18. In our view, however, the evidence could easily support the district court's determination that Defendant's testimony was "willfully false." Defendant's specific words regarding his interest in having an attorney were clearly at issue at the suppression hearing. Agent Violanti and Officer Viera each testified that Defendant had paused in the reading of the rights form to state "I *may* want a lawyer." (emphasis added.) ROA, Vol. 2 at 8, 15, 23. Then, when Defendant testified, he denied that he had qualified his request for a lawyer with the word "may":

Q:     Did you make any statements regarding wanting to talk to a lawyer when they were using the Miranda—

A:     Yes, I told them that I wanted to speak with a lawyer.

Q:     Did you use the word may or—

A:    I told them I wanted a lawyer.

Q.    What was their response to that?

A.    They told me that they was going to get me a lawyer . . . .

*Id*. at 34.  As previously noted, the difference between saying "I want a lawyer" and "I may want a lawyer" is crucial.  *See Davis*, 512 U.S. at 458-62.  The district court could properly find that Defendant's insistence that he did not qualify his interest in seeing a lawyer was not just a "good faith attempt" to explain what had happened.

   c.    *Enhancement for perjury at suppression hearing*

Defendant's final challenge to the enhancement for obstruction of justice is his contention that it is not appropriate to enhance a defendant's sentence for perjury committed at a suppression hearing.  He argues that defendants should be able to contest the voluntariness of confessions without risking sentencing enhancements for perjury if their motions to suppress fail.

We reject Defendant's contention.  We affirmed an obstruction enhancement for perjury at a suppression hearing in *United States v. Alexander*, 292 F.3d 1226 (10th Cir. 2002).  To be sure, in *Alexander* we emphasized that the defendant's false allegations had led to an otherwise unnecessary evidentiary hearing, thereby wasting the scarce resources of both the prosecutor and the court.  But the same could be said in the vast majority of cases in which perjury has been

-16-

committed at a suppression hearing. In any event, we see no need to make an individualized assessment in each case of whether the perjury was the cause for an unnecessary evidentiary hearing. The commentary to § 3C1.1 lists perjury as an example of conduct justifying an enhancement for obstruction of justice. The commentary does not specify that the perjury must be at trial. On the contrary, § 3C1.1 explicitly applies to obstructions of justice taking place "during the course of the investigation, prosecution, or sentencing."

Indeed, in *Alexander* we observed that the contrast between perjury at trial and perjury at a suppression hearing, for purposes of § 3C1.1, may represent "a distinction without a difference." 292 F.3d at 1236. Certainly, there is no reason for courts to be more solicitous of perjury at a suppression hearing than perjury at trial. Perjury obstructs justice in any judicial proceeding, and to the extent that sanctions for perjury deter the practice, so much the better. As the Supreme Court stated in *Dunnigan*, "Respondent cannot contend that increasing her sentence because of her perjury interferes with her right to testify, for we have held on a number of occasions that a defendant's right to testify does not include a right to commit perjury." 507 U.S. at 96. The other circuits to have faced the issue have permitted enhancements under § 3C1.1 for perjury at suppression hearings. *See, e.g., United States v. Matos*, 907 F.2d 274, 276 (2d Cir. 1990); *United States v. Akinkoye*, 185 F.3d 192, 205 (4th Cir. 1999); *United States v. Reed*, 26 F.3d 523,

531 (5th Cir. 1994); *United States v. Charles*, 138 F.3d 257, 266 (6th Cir. 1998);

*United States v. Reddrick*, 90 F.3d 1276, 1283 (7th Cir. 1996); *United States v.*

*Gleason*, 25 F.3d 605, 608 (8th Cir. 1994); *United States v. Sherwood*, 98 F.3d

402, 415 (9th Cir. 1996); *United States v. Wilson*, 240 F.3d 39, 46 (D.C. Cir.

2001).  We now hold that § 3C1.1 extends to perjury at suppression hearings.

We therefore conclude that the district court properly enhanced Defendant's

sentence under U.S.S.G. § 3C1.1, based on its finding that he committed perjury

at the suppression hearing.

2.    *Denial of sentencing reduction under § 3E1.1*

We can summarily dispose of Defendant's apparent challenge to the district

court's decision to deny him a sentencing reduction for acceptance of

responsibility under U.S.S.G. § 3E1.1.  This guideline instructs district courts that

"[i]f the defendant clearly demonstrates acceptance of responsibility for his

offense, decrease the offense level by 2 levels."  U.S.S.G. § 3E1.1(a).  The

commentary states, however, that "[c]onduct resulting in an enhancement under

§ 3C1.1 . . . ordinarily indicates that the defendant has not accepted responsibility

for his criminal conduct."  U.S.S.G. § 3E1.1, cmt. (n.4).  Although "[t]he

Guidelines do envision extraordinary cases where a defendant could receive an

adjustment for acceptance of responsibility despite also receiving an enhancement

for obstruction of justice," *United States v. Proffit*, 304 F.3d 1001, 1009 (10th

-18-

Cir. 2002), Defendant has pointed to no such extraordinary circumstances here.

We thus conclude that the district court did not err in denying Defendant a

sentencing reduction under § 3E1.1.

**Conclusion**

We AFFIRM the sentence below.

United States v. Hawthorne, No. 01-3357


**HENRY,** Circuit Judge, concurring in part and concurring on other grounds in part:

I concur that perjury at a suppression hearing is covered by U.S.S.G. § 3C1.1. I also concur that we strongly prefer specific findings by the district court when it enhances a sentence. As the majority opinion clearly states, the purpose of this court's holding in *United States v. Massey,* 48 F.3d 1560 (10th Cir. 1995), is to make it possible for an appellate court to review district court decisions without having to, in essence, "fill in the blanks." As the *Massey* court put it, the district court in that case

> failed to identify or describe the statement that it concluded was perjurious as required by well-established Tenth Circuit law. Accordingly, we would have no way of reviewing the district court's findings on the elements of perjury even if it had made such findings. Thus, we must remand for the required additional findings.

*Id.* at 1573.

This is precisely the problem here. If we are to affirm the district court's finding, we must infer what the district court meant when it said that Mr. Hawthorne "lied in [his] testimony at the suppression hearing about the voluntariness of the statements that [he] made to the officers," Opinion at 8. After searching the record to determine the court's meaning, I was able to find two bases on which the district court might have found that Mr. Hawthorne had

lied. Neither relies on the difference between "I may want a lawyer" and "I told them I wanted a lawyer," which, as I explain below, is not a sufficient basis for finding perjury.

Mr. Hawthorne testified at the suppression hearing that the officers promised to get him a lawyer. *Id.* at 3. This is a factual assertion, relevant to the "voluntariness" of Mr. Hawthorne's statements to the officers, that the district court might reasonably have considered perjurious. The only record evidence relevant to the judge's thinking on this issue is her comment to Mr. Hawthorne's attorney that, even if the officers *did* make such a promise to provide a lawyer, Mr. Hawthorne's decision to answer questions constituted a waiver of his rights. Rec. vol. 2, at 45. This provides no indication that the judge actually believed the testimony–only that Mr. Hawthorne would not be helped even if the judge did believe it.

More broadly, I think the district court might well have believed that the entirety of the conversation, including the defendant's post-*Miranda* words and actions, indicated clearly that he did not demand a lawyer. I think the court thus determined that Mr. Hawthorne's statements at the suppression hearing were in direct conflict with his statements at the interrogation, and that these statements combined to be material and intentional misrepresentations.

The majority opinion instead finds the "lie" in the difference between the statements "I may want a lawyer" (during the interrogation) and "I told them I wanted a lawyer." Opinion at 16. Therefore, as I understand the majority opinion, it holds that a single finding by the judge that the defendant equivocated during the interrogation and then described his request in unequivocal terms at the suppression hearing is sufficient to support a finding of perjury.

I have some concern whether this statement is sufficient to constitute perjury, which is defined by statute as "willfully subscrib[ing] as true any material matter which [the declarant] does not believe to be true." 18 U.S.C. § 1621(2). It seems entirely plausible to me, however, that a non-lawyer, unfamiliar with the dictates of *Davis v. United States*, 512 U.S. 452 (1994), could believe that he was not lying when testifying "I told them I wanted a lawyer" in these circumstances.

The majority opinion asserts that "when Defendant testified, he denied that he had qualified his request for a lawyer with the word 'may.'" Opinion at 16. In fact, Mr. Hawthorne's testimony does not explicitly deny that he said, "I may want a lawyer." The lawyer's question began, "Did you use the word may or—." *Id.* Mr. Hawthorne interrupted and said, "I told them I wanted a lawyer." *Id.* I think it is reasonable to conclude that Mr. Hawthorne was emphasizing what he thought he had asked for, not that he was denying ever using the word "may." By

-3-

analogy, "I would like a lawyer" is not, strictly speaking, a request for a lawyer. The conditional phrasing, however, is commonly used not to mean, "I *would* like a lawyer *under the following conditions*," but simply, "I want a lawyer." Similarly, "I may be having a heart attack" is rather close to saying "I am having a heart attack." In any case, these shades of difference are insufficient in my mind to constitute perjury.

The Guidelines offer the following explicit exhortation: "In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." U.S.S.G. § 3C1.1, cmt. 2. In my view, a non-lawyer could testify as Mr. Hawthorne did from confusion, mistake, or faulty memory. Hence, to affirm a perjury finding on so slim a reed runs the risk of increasing the sentence of a defendant who testifies to what he believes to be the truth. Given that § 3C1.1 is "not intended to punish a defendant for the exercise of a constitutional right," *id.*, this result is very troubling.

Therefore, as this case is close as to whether the court indicated with sufficient specificity Mr. Hawthorne's perjurious statement or statements, I believe that we should have affirmed on the most non-controversial grounds

possible. In my view, the examples that I described above provide a much clearer–and less Constitutionally problematic–basis for affirming the district court's finding.