**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 4, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WINGROVE EDWARD MICHAEL,

Defendant - Appellant.

No. 09-2201

(D. New Mexico)

(D.C. No. 1:06-CR-01833-MCA-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **MURPHY**, and **MATHESON**, Circuit Judges.

---

## I. Introduction

Wingrove Edward Michael appeals his conviction of possession with intent to distribute more than 100 kilograms of marijuana and his resulting sentence. He argues the district court erred in denying his motion to dismiss the charge on the grounds that the government destroyed potentially exculpatory evidence in bad faith. He further asserts the district court erred in refusing to grant a downward adjustment to his sentence for his minor role and for enhancing his sentence based

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

on a finding of obstruction of justice. Exercising jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, this court **AFFIRMS**.

## II. Background

As found by the district court, Michael, driving a refrigerated tractor-trailer truck, passed through a checkpoint in New Mexico where his truck was subjected to a routine safety inspection. During the initial inspection, a New Mexico Department of Public Safety officer noticed the truck did not display a current Commercial Vehicle Safety Alliance inspection sticker and Michael's logbook reported unusual travel activity. Based on these observations, the officer referred Michael to a second-level safety inspection. During that inspection, Michael identified himself as the owner of the truck, including the trailer. He also produced a bill of lading that was unusual in several ways, including that it identified three boxes of tools as the only cargo. This cargo would leave most of the truck empty and would not require refrigerated transportation.

While conducting an examination of the truck itself, the officer observed the trailer was empty except for three wooden crates toward the front. He also observed several features that seemed to indicate a false wall at the front of the trailer concealing a hidden compartment. Most notably, he observed a three-foot difference in length between the interior and the exterior of the trailer compartment. During the inspection, the initial investigating officer could not detect an odor of marijuana, but acknowledged in his report that another officer

stated he could smell marijuana. At the conclusion of the inspection, the officer detained Michael, performing a pat-down search and conducting a canine inspection of the exterior of the truck. The dog alerted at the front of the trailer.

Michael was arrested and a search warrant for the truck was obtained. The officers then opened the three wooden crates. The crates measured approximately four to five feet on each side and were fastened with wood screws, insulated on the interior with Styrofoam, and sealed with silicone along the joints. Bundles inside the crates, wrapped in contact paper, contained marijuana. The crates and their contents were seized. Drug Enforcement Administration ("DEA") agents found no fingerprints on the seized evidence. The marijuana was photographed and weighed, samples were taken for testing, and it was transferred to the DEA drug evidence vault in Albuquerque.

Michael was charged with a single count of possession with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). After the charge was filed, the DEA sent a letter to the United States Attorney informing him that the bulk marijuana, but not the samples, would be destroyed after sixty days unless a written request for an exception to the DEA's drug destruction policy was received before that period expired. Extensive correspondence between two DEA agents, the Assistant United States Attorney ("AUSA"), and Michael's attorney followed. The details of the exchanges were part of the district court's findings and need not be

repeated here. In essence, Michael's attorney repeatedly asserted a general objection to the destruction of the marijuana, and the DEA agents and the AUSA repeatedly directed Michael's attorney to seek a court order. Michael's attorney informed both a DEA agent and the AUSA of his intention to file a motion.

After the sixty-day period had expired but before the marijuana was actually destroyed, Michael's attorney filed a motion to preserve the evidence. In the motion, he explained that he contemplated hiring experts to analyze the evidence and conduct a scientific odor analysis. He nonetheless asserted the short time frame prevented him from fully developing a theory about the usefulness of the evidence. The district court directed the government to file an expedited response to Michael's motion. The AUSA, however, testified he did not become aware of the motion until more than a week after it was filed because of the Thanksgiving holiday and other business. Upon learning of the motion, he sent an email to the DEA agent. The agent stated he did not receive the email until yet another day had gone by because of his absence from work. When he did receive it, he informed the AUSA that the marijuana was at the burn site and destruction would not be delayed. Thus, despite the pending motion to preserve evidence, the marijuana was destroyed that same day. The government informed the district court of the destruction when it filed its response.

After acknowledging the motion to preserve evidence was moot, Michael moved to dismiss the charge and/or suppress "the alleged marijuana evidence

seized from the tractor/trailer," arguing the government's destruction of the marijuana violated his due process rights. Michael subsequently submitted the affidavit of a potential expert witness who opined how the marijuana might have been tested to determine whether a human could have detected any odor. At a hearing on Michael's motion, the expert admitted various flaws in his proposed odor analysis that could affect the reliability of the results. Michael's attorney indicated the expert was not retained to provide expert testimony that would be admissible at trial, but rather only to explore potential usefulness of the evidence.

The district court acknowledged a dispute whether the odor was detectable and credited some evidence the government acted in bad faith when it destroyed the marijuana, thereby raising due process concerns. It concluded, however, that the proper remedy was to suppress any evidence the officers or any other human could smell the marijuana. At trial, Michael testified in his own defense, stating he did not know the crates contained marijuana. He was convicted by the jury.

At sentencing, Michael requested a downward adjustment to his offense level based on his minor role in the criminal activity, arguing he was nothing more than a courier. *See* U.S. Sentencing Guidelines Manual § 3B1.2. The district court denied that adjustment. In addition, Michael's presentence report ("PSR") recommended a two-level upward adjustment for obstruction of justice based on perjury pertaining to the conduct forming the basis of the offense, notably, Michael's false testimony that he lacked knowledge of the contents of

the crates. *See id.* § 3C1.1. Michael objected to the enhancement, noting the Guidelines require specific findings of the elements of perjury and that a § 3C1.1 enhancement cannot be based solely on a defendant's decision to testify. The district court applied the obstruction of justice enhancement, calculating Michael's advisory guidelines sentencing range at seventy-eight to ninety-seven months. The court sentenced Michael to a seventy-eight month term of imprisonment.

## III. Discussion

### A. Destruction of Evidence

Michael argues the district court erred in denying his motion to dismiss the charge based on the government's destruction of potentially exculpatory evidence, namely the bundles of bulk marijuana. He asserts the destroyed evidence could have been used to show that a human could not have detected the smell of the contents of the bundles. This fact purportedly would bear on Michael's knowledge of the contents.

To demonstrate that destruction of evidence rises to the level of a due process violation, a defendant must show the government destroyed potentially useful evidence, there was no reasonable avenue for obtaining comparable evidence, and the destruction was in bad faith. *Arizona v. Youngblood*, 488 U.S.

51, 57-58 (1988); *United States v. Bohl*, 25 F.3d 904, 910 (10th Cir. 1994).[1]  A

district court's underlying factual determinations are reviewed for clear error.

*Bohl*, 25 F.3d at 909; *see United States v. Gardner*, 244 F.3d 784, 788 (10th Cir.

2001).  This court reviews for abuse of discretion the district court's decision to

remedy the government's bad faith destruction of evidence by suppressing

secondary evidence rather than dismissing the charge.  *See United States v.*

*Barajas-Chavez*, 358 F.3d 1263, 1267 (10th Cir. 2004); *see also Bohl*, 25 F.3d at

914 (explaining the weighing of factors to be considered in choosing an

appropriate remedy).

    The question on appeal is whether suppression of all odor evidence was an

adequate remedy for the bad faith destruction of the marijuana.  Michael advances

no argument as to why dismissal of the charge was required, but seems to

presume dismissal is always required once a constitutional violation of this nature

is established.  This court, however, has clearly stated that once a due process

violation is established, "the decision to either suppress the government's

secondary evidence describing the destroyed material or to dismiss the indictment

turns on the prejudice that resulted to the defendant at trial."  *Bohl*, 25 F.3d at

914.

---

[1]If evidence is not merely "potentially useful," but rather has exculpatory value that is apparent before its destruction, a defendant need not demonstrate bad faith.  *See California v. Trombetta*, 467 U.S. 479, 489 (1984).  No argument has been made here, however, that Michael can satisfy the more exacting *Trombetta* standard, nor does the record support such a conclusion.

There is no reason in this case to second guess the sound judgment of the district court in fashioning an appropriate remedy. The district court correctly considered the prejudice that might result from Michael's inability to access the destroyed evidence. It appropriately noted the low probability of usefulness of the destroyed evidence based on the expert's admission that the proposed odor analysis would not be able to take account of many relevant factors, such as any change in odor over time, competing odors that might have been present in the trailer, temperature, and wind speed.

Moreover, the court considered what role the odor evidence might play in the government's case as to each element of the offense. It explained that the destroyed evidence was not required for the government to demonstrate the nature of the contents of the crates or the quantity of marijuana. It further noted the government recovered no fingerprints or biometric information linking Michael to the destroyed evidence, and Michael would be able to point to the absence of such evidence at trial. Finally, the district court concluded the only way the government might use the destroyed evidence to Michael's prejudice would be to suggest Michael could have or would have known the contents of the crates by their distinctive odor.

Accordingly, the district court cured any possible prejudice to Michael by suppressing all evidence the government could otherwise introduce concerning

human ability to detect the marijuana's odor.[2]  Although the issue of Michael's knowledge was central to the government's case, once the district court suppressed the odor evidence, the issue of whether humans could detect the odor played no part in the trial.  The district court carefully crafted the remedy to protect Michael's rights and did not abuse its discretion in choosing to suppress secondary evidence rather than dismiss the charge.

## B.  Sentencing

### 1.  Obstruction of Justice

Michael argues the district court improperly enhanced his sentence for obstruction of justice based on Michael's testimony at trial.  In the alternative, Michael contends the district court failed to make the requisite factual findings to support the enhancement and that this court should remand for clarification by the district court.

An obstruction of justice enhancement is appropriate when a court finds the defendant has committed perjury pertaining to conduct that is the basis of the offense for which a defendant was convicted.  U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.4(B).  In the context of § 3C1.1, perjury is committed when a

---

[2]Any affirmative use Michael might have made of the odor analysis in an effort to demonstrate his lack of knowledge is purely speculative and, in any event, this argument is not adequately developed on appeal.  It would, moreover, have been subject to competing evidence that at least one officer detected the odor at the time of arrest.  Accordingly, there is no error in the district court's determination that any prejudice to Michael could be remedied by suppression.

defendant makes a false statement under oath, the statement concerns a material matter, and the defendant intends to testify falsely. *United States v. Hawthorne*, 316 F.3d 1140, 1145 (10th Cir. 2003). We review factual findings relating to an obstruction of justice enhancement for clear error and legal interpretations of the sentencing guidelines de novo. *Id.* Specific findings concerning each of the elements of perjury is strongly preferred. *United States v. Dunnigan*, 507 U.S. 87, 95 (1993), *abrogated on other grounds*, *United States v. Wells*, 519 U.S. 482 (1997). In addition, this court requires the district court to identify, at least generally, the statements found to be false. *Hawthorne*, 316 F.3d at 1146.

Here the district court merely recited: "I am overruling that objection [to the enhancement], and there will be the adjustment that stands for obstruction. I think all the criteria have been met here." In isolation, this statement would be insufficient. Although this court strongly urges district courts to make detailed and explicit findings on each required element supporting an obstruction of justice enhancement based on perjury, the context of the district court's statements may be taken into account on appellate review. *See id.* at 1146.

The context of the district court's statements cure any deficiency here. First, the PSR specifically recommended the obstruction of justice enhancement based on Michael's trial testimony that he lacked knowledge the crates in the trailer contained marijuana. The PSR quoted Michael's trial testimony where he specifically answered "no" to the questions, "Did you know what was in the

crates? . . . Did you know that there was marijuana in there? . . . Did you ever suspect any marijuana being in there?" The PSR explained that the jury's guilty verdict necessarily indicated the jury did not find Michael's testimony as to his knowledge truthful, since knowledge is an element of the offense for which Michael was convicted.

At the sentencing hearing, Michael's lawyer read the testimony quoted in the PSR and focused his argument on that testimony. Michael also correctly set out the elements of perjury the district court was required to find, and presented argument as to how Michael's testimony did not meet the elements. The government likewise focused on the quoted testimony and again laid out the elements of perjury. Immediately prior to the district court's ruling, the government stated:

> [Michael] was asked about three or four different ways whether he knew about the drugs in that trailer, and he denied it and he said "No."
>
> So Your Honor, the point with this is, all three prongs of this test are satisfied. He was under oath. It was material, and it was material because everything that he was saying was directed at the facts of the case, and for the jury to conclude that his story was true. And the last prong itself, Your Honor, was that it was false testimony and it was willful. It's not a mistake.

Immediately thereafter, the court found all the requirements for application of the enhancement were met. While the far better practice is for the district court to make specific findings, in the context of the dialogue at the sentencing hearing

-11-

and the PSR, it is clear the district court found Michael's testimony met each of the three requirements for perjury sufficient for this court to uphold the findings as adequate.

Michael's argument that the jury's guilty verdict is not necessarily inconsistent with his testimony that he lacked knowledge of the contents of the crates also fails. He argues the jury could have found him guilty based on a constructive possession rather than actual possession theory. Even if that were true, however, constructive possession does not negate the knowledge element of an offense. *See United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998) ("Generally, a person has constructive possession when he or she *knowingly* holds ownership, dominion or control over the object and premises where it is found." (emphasis added)). The district court here, in instructing the jury that it could find Michael guilty based either on actual possession or constructive possession, properly explained that "[a] person who, although not in actual possession, *knowingly* has the power at a given time to exercise dominion or control over an object, either directly or through another person or persons, is then in constructive possession of it." (emphasis added). That is, constructive possession is an alternate avenue for proving possession, but does not supplant the knowledge requirement. The jury necessarily had to find that Michael had knowledge of the crates' contents to find him guilty whether his possession was actual or constructive.

Accordingly, the district court's finding that Michael committed perjury was not based solely on Michael's decision to testify in his own defense, but rather that he willfully testified to a material fact the jury necessarily found was false beyond a reasonable doubt. *See* U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.2. The district court did not err in applying the two-level upward adjustment for obstruction of justice.

### 2. *Minor Role Adjustment*

Michael argues he should have been granted a downward adjustment in his offense level for his minor role in the criminal activity. A defendant may receive a minor role adjustment if his part in the offense renders him significantly less culpable than an average participant. *Id.* § 3B1.2 cmt. n.3(A). We review the district court's factual finding that Michael did not play a minor role for clear error and the district court's application of the sentencing guidelines de novo. *United States v. Bowen*, 437 F.3d 1009, 1018 (10th Cir. 2006). The defendant bears the burden of proving entitlement to a minor role adjustment by a preponderance of the evidence. *See United States v. Mendoza*, 468 F.3d 1256, 1264 (10th Cir. 2006).

In denying the minor role adjustment to Michael, the district court explained that it had insufficient information to indicate one way or another what Michael's role was, including whether he was directing or acting at the direction of others. The sole evidence before the district court was Michael's own

testimony that he was only a courier, which the district court can discredit. *See United States v. Salazar-Samaniega*, 361 F.3d 1271, 1278 (10th Cir. 2004) ("A defendant's own testimony that others were more heavily involved in a criminal scheme may not suffice to prove his minor or minimal participation, even if uncontradicted by other evidence."). Moreover, even if Michael's role was limited to that of a courier, a courier role is not minor per se. *See United States v. Eckhart*, 569 F.3d 1263, 1276 (10th Cir. 2009) (noting the importance of drug couriers in the drug trade and that no per se rule concerning minor role adjustments applies to couriers). "[A] downward adjustment for a defendant's role in an offense turns on the defendant's culpability relative to other participants in the crime." *Id.* (quotation omitted). It is particularly appropriate to deny a minor role in a case such as this one where no other participant in the crime is known to which Michael's role can be compared. *See* U.S. Sentencing Guidelines Manual 3B.1.2 cmt. n.2.

The district court had before it more than sufficient evidence to find that Michael's role was not minor, including Michael's ownership of the tractor-trailer and control over it, and the quantity of marijuana in the trailer. Accordingly, the district court did not clearly err in finding Michael had not met his burden to demonstrate his role was minor.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is

**AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge