**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 15, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PAUL DEAN CANTRELL,

    Defendant - Appellant.

No. 19-7025
(D.C. No. 6:18-CR-00069-RAW-1)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **MURPHY**, and **CARSON**, Circuit Judges.

---

This matter comes to us on an *Anders* brief. Counsel for Paul Dean Cantrell filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and requested leave to withdraw as counsel. The brief identified three possible arguments that Mr. Cantrell might pursue on appeal: (1) he is not a career offender under United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.")

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 4B1.1, (2) he did not maintain his premises for the purpose of manufacturing or distributing a controlled substance under U.S.S.G. § 2D1.1(b)(12), and (3) his Motion to Quash the Warrant and Suppress Evidence should have been granted. We invited Mr. Cantrell to raise his own arguments challenging the district court's judgment but he failed to do so. After considering the *Anders* brief as well as doing an independent examination of the entire record we conclude that there are no non-frivolous grounds for appeal. We therefore **grant** the motion to withdraw and **dismiss** the appeal.

## I

## A

Mr. Cantrell was the sole defendant named in a four-count indictment in the Eastern District of Oklahoma. He filed a Motion to Quash the Warrant and Suppress Evidence. He then pleaded guilty to Count I, knowingly possessing methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

At his plea hearing, the government explained that he was a "career offender" pursuant to U.S.S.G. § 4B1.1, and, as a result, his Guidelines advisory range would be 151 188 months' imprisonment. Assisted by counsel, Mr. Cantrell acknowledged this range and entered a plea of guilty to Count I without a

2

written plea agreement. The district court then denied as moot his pending Motion to Quash the Warrant and Suppress Evidence in a minute order.

**B**

The Presentence Investigation Report ("PSR") calculated Mr. Cantrell's base offense level for 21 U.S.C. § 841(a)(1) to be sixteen pursuant to U.S.S.G. § 2D1.1. That offense level was enhanced by two levels for possessing a dangerous firearm in violation of U.S.S.G. § 2D1.1(b)(1). This brought the total offense level to eighteen.

The PSR then outlined two enhancements that are relevant here. First, it added a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing illegal drugs in violation of U.S.S.G. § 2D1.1(b)(12). This brought the adjusted offense level to twenty. Second, the PSR added a Chapter Four enhancement, pursuant to U.S.S.G. § 4B1.1(b)(3), because Mr. Cantrell qualified as a career offender. This brought the offense level to thirty-two. For the career-offender classification to apply, the following criteria had to be satisfied: the defendant had to be at least eighteen years old at the time of the instant conviction, the instant conviction had to be a felony that is either a crime of violence or a controlled substance offense, and the defendant had to have at least two prior felony convictions of either a crime of violence or a controlled substance offense. *See* U.S.S.G. § 4B1.1(a).

3

The PSR noted that Mr. Cantrell had the following three prior qualifying controlled substance convictions:

- Possession of CDS with Intent to Distribute (Methamphetamine and Marijuana), case number CF-2015-966 in Pittsburg County District Court, McAlester, OK;

- Unlawful Possession of Controlled Drug (Marijuana) with Intent to Distribute, case number CF-2015-44 in Latimer County District Court, Wilburton, OK; and

- Possession of CDS with Intent to Distribute (methamphetamine), case number CF-2015-1013 in Pittsburg County District Court, McAlester, OK.

*See* R., Vol. III, ¶ 21, at 6 (Presentence Investigation Report, filed Jan. 11, 2019). The PSR added, "The offense level for a career offender is 32 because the statutory maximum term of imprisonment is 20 years or more, but less than 25 years." *Id.*; *see* U.S.S.G. § 4B1.1(b)(3) (specifying the offense level of thirty-two for such offenses). After subtracting the three levels for his acceptance of responsibility, the PSR calculated Mr. Cantrell's total offense level at twenty-nine.

**C**

Mr. Cantrell filed an objection to the PSR and specifically challenged the inclusion of a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing illegal drugs pursuant to U.S.S.G. § 2D1.1(b)(12).  This objection did not mention § 4B1.1 or the defendant's status as a career offender.  The government responded to this objection and argued that sufficient evidence existed to warrant the two-level enhancement under § 2D1.1(b)(12).  The government also contended that "the enhancement issue is actually moot . . . because the defendant is a career offender."  R., Vol. III, at 22 (Gov't Resp. Letter, dated Dec. 13, 2018).

Mr. Cantrell then filed a motion for a sentencing variance and requested that he not be considered a career offender.  The government opposed this request prior to sentencing.

**D**

At sentencing, the district court first considered whether Mr. Cantrell was a career offender under U.S.S.G. § 4B1.1.  The district court asked defense counsel if he would like to address his earlier objection.  Defense counsel declined, having no "need to address it additionally other than [the] objection [he] filed." *Id*., Vol. II, at 54 (Sent'g Hr'g Tr., dated Apr. 17, 2019).  He then explained that "the [sentencing] calculation *without* the career offender guideline calculation is

correct." *Id.* (emphasis added). The court noted that this objection only addressed U.S.S.G. § 4B1.1 "in an oblique way." *Id.*

The district court then applied the Chapter Four enhancement. Specifically, it noted that Mr. Cantrell was at least eighteen years old at the time he committed the instant offense; the instant offense is a controlled substance offence; and he has three prior convictions for controlled substance offences. *Id.* at 54 55. After detailing those convictions, the district court found, "by a preponderance of the evidence[,] that the defendant does qualify as a career offender as defined in . . . [U.S.S.G. §] 4B1.1." *Id.* at 55.

The district court then considered Mr. Cantrell's objection to the two-level enhancement, pursuant to U.S.S.G. § 2D1.1(b)(12), for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. Relying on the PSR's factual averments, the court observed that Mr. Cantrell "lived alone in the residence in question which was purchased in October 2017. At the time of the search warrant and [his] arrest [in late January 2018] for the instant offense, he was unemployed and had been without employment for approximately two years." *Id.* at 56. It further noted that, when he was arrested, Mr. Cantrell had on his person $1,611 in cash; and during the search of his residence, law enforcement seized "three different types of controlled substances, two digital

6

scales, [and] numerous used and unused packaging baggies located with the controlled substances." *Id.* at 56 57.

After expressly referencing the § 2D1.1 Guidelines commentary particularly Application Note 17, which specifies certain factors "the court should consider" in applying the Guidelines § 2D1.1(b)(12) the district court found the following:

> [T]he defendant used the home as his primary residence. However, based on the evidence in this case, he also used the home as a means of income, specifically to sell controlled substances, but not the sole purposes of the home. Controlled substance distribution was one of the primary purposes of the home rather than an incidental or collateral use.

R., Vol. II, at 57. Based on these findings, the court concluded "by a preponderance of the evidence[,] that the enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance is applicable in this case." *Id.* at 58.

The district court ultimately sentenced Mr. Cantrell to 151 months' imprisonment, the low end of the Guidelines range.

## II

Counsel for Mr. Cantrell filed a brief pursuant to *Anders v. California*, *supra*, and now moves to withdraw as counsel. As required by *Anders*, counsel has filed a brief with the court "referring to anything in the record that might arguably support the appeal," 386 U.S. at 744, and has furnished a copy of the

7

brief to Mr. Cantrell, *Anders* Br. at 12 (certifying that counsel "mailed a true and correct copy to . . . Paul Dean Cantrell"). Mr. Cantrell, despite being advised of his right to file a pro se supplemental brief, has failed to do so.

The *Anders* brief identifies three arguments that Mr. Cantrell might possibly pursue on appeal: (1) he is not a career offender under U.S.S.G. § 4B1.1, (2) he did not maintain his premises for the purpose of manufacturing or distributing a controlled substance under U.S.S.G. § 2D1.1(b)(12), and (3) his Motion to Quash the Warrant and Suppress Evidence should have been granted. *See Anders* Br. at 7.

We must now "conduct a full examination of the record to determine whether defendant's claims are wholly frivolous." *United States v. Calderon*, 428 F.3d 928, 930 (10th Cir. 2005). If they are, we may grant counsel's motion to withdraw and dismiss the appeal. *Id*.

**III**

After an independent review of the record, we conclude that there are no non-frivolous grounds for appeal. More specifically, we have considered the three areas identified in the *Anders* brief and determined that they wholly lack legal merit. Put affirmatively, the district court clearly did not err in applying the Guidelines enhancements under §§ 4B1.1 and 2D1.1(b)(12). The record also provides ample support for the district court's decision to deny the Motion to

8

Quash the Warrant and Suppress Evidence. We consider these specific matters below.

## A

The *Anders* brief first points us to the district court's application of U.S.S.G. § 4B1.1. As noted, a defendant qualifies for the status of career offender if (1) he was at least eighteen years old at the time he committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. *See* U.S.S.G. § 4B1.1(a). This Guidelines provision places career offenders in the highest criminal-history category i.e., Category VI. *See id.* § 4B1.1(b). Further, if the statutory maximum of the offense of conviction is twenty years or more, "but less than" twenty-five years, then the career offender is assigned an offense level of thirty-two, if that level is "greater than the offense level otherwise applicable." *Id.* § 4B1.1(b)(3).

It is beyond cavil that the district court did not err in determining that Mr. Cantrell qualified for the status of career offender. He satisfies each of the three criteria. First, he was fifty-eight years old at the time of the instant offense of conviction (i.e., at least eighteen years old). Second, his offense of conviction possession of methamphetamine with intent to distribute, in violation of 21 U.S.C.

9

§ 841(a)(1) is a controlled substance offense under the Guidelines, in that it is punishable by imprisonment for more than one year and involves the possession of a controlled substance with the intent to distribute. *See* U.S.S.G. § 4B1.1 cmt. n.1 (noting that the definition of "controlled substance offense" is found in § 4B1.2); *id.* § 4B1.2(b) ("The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."). And, represented by counsel, Mr. Cantrell pleaded guilty to this offense. Third, Mr. Cantrell has not only two, but three, prior felony controlled substance convictions for possessing illegal drugs with the intent to distribute them. Consequently, the record provides ample support for the district court's determination that Mr. Cantrell qualified for the status of career offender. And we thus conclude that any appellate challenge to the propriety of this determination would be frivolous.

**B**

The *Anders* brief next points us to the district court's two-level enhancement under § 2D1.1(b)(12). In his opposition letter in the district court to the PSR, Mr. Cantrell outlined a possible challenge to this provision.

10

Specifically, he relied on Application Note 17 of the Guidelines commentary, which states that courts applying the Guideline "should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes." U.S.S.G. § 2D1.1 cmt. n.17. In his objection letter, Mr. Cantrell's counsel asserted that "[t]here is nothing in discovery that points to the frequency of licit or illicit uses of the residence" to support an enhancement under § 2D1.1(b)(12). R., Vol. III, at 20 (Obj. Letter, dated Dec. 11, 2018).

The Guidelines specify that a two-level increase is warranted "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). An application note in the Guidelines commentary explains that "[m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." *Id.* § 2D1.1 cmt. n.17. And, in making this determination, "the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes." *Id.* We treat the Guidelines commentary as "authoritative unless it violates the Constitution or a

11

federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

We discern no non-frivolous basis for challenging the district court's application of § 2D1.1(b)(12). The uncontested facts, as outlined in both the PSR and as summarized by the district court at sentencing, indicate that one of the primary or principal uses for Mr. Cantrell's residence was distributing controlled substances. For example, during the execution of the search warrant on his residence, law enforcement seized methamphetamine, hydrocodone, marijuana, two digital scales, and "used and unused packaging baggies." R., Vol. II, at 56 57; *see id.*, Vol. III, ¶¶ 7 8, at 4 5. And, though the district court did not specifically mention it, law enforcement also seized a firearm. *Id.*,¶ 7, at 2. The cases are legion in our circuit (as well as others) that have deemed such items as law enforcement found in the search to be "'tools of the trade' that is, means for the distribution of illegal drugs." *United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991); *accord United States v. Hall*, 473 F.3d 1295, 1304 (10th Cir. 2007); *United States v. Mendoza-Salgado*, 964 F.2d 993, 1008 (10th Cir. 1992). And we have concluded that the presence of such tools of the trade in a residence provides significant support for the application of the § 2D1.1(b)(12) enhancement. *See United States v. Murphy*, 901 F.3d 1185, 1191 92 (10th Cir. 2018) (noting that, in the "totality of the circumstances assessment" appropriate

for determining whether to apply the § 2D1.1(b)(12) enhancement, courts should consider, *inter alia*, whether "tools of the drug trade (firearms, digital scales, laboratory equipment, and packaging materials) are present in the home"); *see United States v. Martinez*, 803 F. App'x 203, 207 (10th Cir. 2020) (unpublished) (holding that "any objection" to application of the § 2D1.1(b)(12) enhancement "would have failed for a lack of merit" because the defendant "used his RV to store a significant quantity of methamphetamine, digital scales, and firearms").

Moreover, consistent with the reasoning of *Murphy* and the district court's analysis, the fact that Mr. Cantrell had the monetary means to purchase his residence, even though he had "no legitimate employment or other identifiable and legitimate source of income" for more than one year and was arrested with a not insignificant amount of cash on his person after being unemployed for two years, would permit a court to reasonably infer that his "main, if not sole, source of funds" was drug trafficking, and this in turn would fortify the plausible inferences from the other evidence that Mr. Cantrell used his home for drug trafficking. *See Murphy*, 901 F.3d at 1193; *see also United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991) (noting that "the drug trade is a cash-and-carry business"). And, contrary to Mr. Cantrell's objection before the district court, the evidence before the district court provided ample basis for it to consider the lawful and unlawful uses to which Mr. Cantrell put his home. And after doing

so and expressly acknowledging the instructions of Guidelines Application Note 17, the court plausibly found that, while "the defendant used the home as his primary residence," "[c]ontrolled substance distribution was one of the primary purposes of the home rather than an incidental or collateral use." R., Vol. II, at 57. As such, the court faithfully discharged its duty under the Guidelines. *See Murphy*, 901 F.3d at 1191 ("The commentary does not require a <u>comparison</u> of the frequency of lawful and unlawful activity at the premises. It requires only that a court 'consider' such frequency in deciding whether drug-related activities were a primary, rather than incidental, use of the premises.").

All that said, as the government suggested before the district court, we would not be situated in any event to grant Mr. Cantrell relief that would have anything more than an illusory effect in the real world. That is to say, even if his § 2D1.1(b)(12) challenge   which pertains to the calculation of his offense level   were meritorious (which it is not), it would not materially affect his Guidelines sentence, because his offense level was determined by his status as a career offender, which we have determined *supra* was the correct status for Mr. Cantrell. Indeed, Mr. Cantrell's counsel acknowledges as much. *See Anders* Br. at 8 (noting that, if Mr. Cantrell is a career offender, "[t]he two-level enhancement defendant received pursuant to . . . [§ 2D1.1] . . . had no material effect on [his] term of incarceration"). More specifically, irrespective of whether

14

the district court properly applied the § 2D1.1(b)(12) enhancement, the offense level assigned to him as a career offender — that is, thirty-two — would still be "greater than" the "offense level otherwise applicable," and therefore, the career-offender offense level would control. U.S.S.G. § 4B1.1(b)(3).

Thus, having determined that Mr. Cantrell was properly assigned the status of career offender, we necessarily conclude that Mr. Cantrell could not have altered his sentence through his § 2D1.1(b)(12) challenge. Therefore, the challenge is effectively moot because our relief would not have "some effect in the real world." *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005) (quoting *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)); *see United States v. Payton*, 405 F.3d 1168, 1172 (10th Cir. 2005) ("[Defendant] received the mandatory minimum sentence required by statute. The two-level enhancement [she] received pursuant to § 2D1.1(b)(1) [for firearm possession] therefore had no material effect on her term of incarceration. Consequently, the issue is moot and we need not address it."); *United States v. Williams*, 216 F.3d 611, 615 (7th Cir. 2000) ("We need not decide if the government's evidence was sufficient [for purposes of an enhancement under U.S.S.G. § 2D1.1(b)(1)], however, because [defendant] received the statutory minium sentence . . . . As a result, his challenge to the two-level enhancement is moot, and we need not decide the issue.").

15

For all of the foregoing reasons, we cannot discern a non-frivolous basis for challenging the district court's application of § 2D1.1(b)(12).

## C

The *Anders* brief identifies as an issue whether Mr. Cantrell's Motion to Quash the Warrant and Suppress Evidence should have been granted. *Anders* Br. at 9. The record, however, clearly supports the district court's denial of Mr. Cantrell's Motion to Quash the Warrant and Suppress Evidence. Specifically, and as the *Anders* brief notes, the district court did not rule on the motion because Mr. Cantrell pleaded guilty *before* it could be heard. Further, even if there had been a suppression ruling before he pleaded guilty, his guilty plea waived any appellate challenge. *See United States v. Hawthorne*, 316 F.3d 1140, 1145 (10th Cir. 2003) ("[E]ntry of an unconditional guilty plea results in the waiver of all nonjurisdictional defenses." (quoting *United States v. Robertson*, 45 F.3d 1423, 1434 (10th Cir. 1995)); *see also United States v. Grijalva*, 800 F. App'x 632, 636 (10th Cir. 2020) (unpublished) (determining that defendant's unconditional guilty plea "waived any appellate challenge" to his pending motion to suppress).

For these reasons, we conclude that any potential challenge to the district court's denial of Mr. Cantrell's Motion to Quash the Warrant and Suppress Evidence would be frivolous.

16

**IV**

Having considered the *Anders* brief submitted by Mr. Cantrell's counsel and independently reviewed the record, we conclude that there are no non-frivolous grounds for Mr. Cantrell to pursue on appeal.  Therefore, we **GRANT** counsel's motion to withdraw and **DISMISS** Mr. Cantrell's appeal.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge